**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LIFESTYLE COMMUNITIES, LTD., et al. | ) ) ) | CASE NO. 2:22-cv-01775-SDM-EPD |
| **Plaintiffs** | ) ) ) | **JUDGE SARAH D. MORRISON** |
| v. | ) ) ) | **MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS** |
| CITY OF WORTHINGTON, OHIO | ) ) ) | **DEFENDANT, CITY OF WORTHINGTON, OHIO'S COMPLYING REPLY IN SUPPORT OF ITS MOTION TO DISMISS *INSTANTER*** |
| **Defendant** | ) ) ) ) | |

### I. Plaintiffs Do Not Have a Protected Property Interest Under the Due Process Clause.

Plaintiffs' attempt to expand their ability to demonstrate a protected property interest fails as a matter of law. The Court need not look further than the very case Plaintiffs cite, *Ctr. for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F.Supp.3d 639, 657 (S.D. Ohio 2016):

> To determine whether Powell Crossing has a protected property interest, ***the court looks to substantive state zoning laws***. . . . In order to establish an expectation or claim of entitlement, ***a plaintiff must prove that the state or local governmental actor lacked the discretion*** to deny the proposed land use, so long as plaintiff complied with all applicable zoning requirements.

Simply put, Plaintiffs cannot have a legitimate claim of entitlement to a discretionary decision. *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000); *Triomphe Investors v. City of Northwood,* 49 F.3d 198, 202–03 (6th Cir. 1995) (finding that the plaintiff did not have a property interest in a special use permit because the city had the discretion to grant or deny the permit).

### A. Plaintiffs' property use is subject to existing zoning regulations; simply owning and desiring to develop property does not create a protected property interest.

The right to use and develop property is not unfettered; it "is subject to the reasonable exercise of state authority, including the enforcement of valid zoning and land-use

1

restrictions." *Palazzolo v. Rhode Island,* 533 U.S. 606, 627, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). Plaintiffs' suggestion that the current S-1 zoning is unconstitutional because Plaintiffs' desired use is not permitted under that zoning is fundamentally incorrect. First, "[z]oning ordinances are presumed constitutional." *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 690 N.E.2d 510, 511 (Ohio 1998). Second, Plaintiffs bear the heavy burden to establish that the zoning for the property is "unconstitutional beyond fair debate." *Id*. Third, the Ohio Supreme Court expressly held that constitutionality of zoning regulation depends upon whether it is *clearly* arbitrary and unreasonable, "not upon whether it has deprived landowner of all economically viable uses." *Id.* Despite Plaintiffs' self-serving statements in their Response, their Complaint does not plead sufficient facts to raise a plausible claim given these legal requirements.

Plaintiffs' claims lack legal support too, and the cases upon which they rely do not change that. *Norwood* involved condemnation of blighted property for economic development, not the right to use property irrespective of zoning regulations. *See Norwood v. Horney*, 853 N.E.2d 1115, syllabus (Ohio 2006). Still, *Norwood* made it clear that "zoning regulations . . . have been upheld as valid exercises of police powers over due-process challenges." *Id.* at 1135, fn. 11.

The *Blue Rock* case is similarly unpersuasive. *Blue Rock* did not involve a zoning dispute—it involved physical damage to plaintiff's existing building. *Blue Rock Investments v. City of Xenia, Ohio*, No. 3:17-CV-409, 2020 WL 1443369, *2 (S.D. Ohio Mar. 23, 2020).

And Plaintiffs' misguided reliance on *Washington ex rel. Seattle Title Trust Co. v. Roberge* is particularly telling. Plaintiffs use a cherry-picked quote to claim *Roberge* allows an owner to devote its land "to any legitimate use," but fail to mention that the property owner's proposed use in that case was "in harmony with . . . the zoning ordinance." *Roberge*, 278 U.S. at 121. Here, Plaintiffs' proposed use and development is contrary to the existing zoning.

2

Plaintiffs' reliance on non-binding, out-of-state case law is also unpersuasive. (*Response*, ECF No. 22, PAGEID 404). In *New Products Corp. v. City of N. Miami*, 271 So.2d 24, 25 (Fla. App.1972), the Florida court ordered the city to rezone property based on a contractual obligation required by Florida law. Critically, contract zoning is unlawful in Ohio. *Gillespie v. Stow*, 584 N.E.2d 1280, 1285 (Ohio App. 1989). Likewise, *Rippley v. City of Lincoln*, 330 N.W.2d 505 (N.D. 1983) is inapplicable. *Rippley* analyzed an inverse condemnation claim, not a zoning dispute, under the North Dakota constitution involving a property that was forced to be used for governmental purposes only. That is certainly not the case here. Plaintiffs' property is currently zoned S-1, C-2, C-3, and R-10, and includes multiple nongovernmental uses.[1]

### B. Neither the Comprehensive Plan nor any of the City's alleged conduct undermines the City's discretion in rezoning property.

#### 1. By Plaintiffs' own admission, the Comprehensive Plan is an uncodified guiding document.

The City agrees with Plaintiffs' assertions that the Comprehensive Plan is intended to guide planning and development.[2] To be sure, the Comprehensive Plan is a guiding document, but it is not law. *See Southgate Corp. v. Village of Granville,* 2019-Ohio-2188, 2019 Ohio App. LEXIS 2259, ¶ 13 (5th Dist.) ("A comprehensive plan represents a community's policy toward public and private development, *it is not, like a zoning regulation, a law*."). Charter Section 6.03 requires the

---

[1] S-1 zoning permits the following nongovernmental uses in the S-1 zoning district: hospitals, colleges, churches, parochial schools, plant production, preschool, nursery school, and child daycare centers. *Section 1147.01 and Section 1123.63 of the Worthington Codified Ordinances*. Over twenty-five percent of the property is zoned C-2 (Community Shopping Center) and C-3 (Institutions and Office), which permit over fifteen additional nongovernmental uses. And, lest we forget, the Property had this zoning when Plaintiffs first started looking at it for development and obviously, before they even acquired it.

[2] "The Resolution plainly establishes that City Council expressly adopted a specific land use plan for the Property '*to guide* future development of the site. . . .' " (Response, ECF No. 22, PAGEID 385) (emphasis added). "By its plain terms, this Resolution was enacted *to 'guide*' and facilitate any future development[.]' " (*Id*. at PAGEID 386) (emphasis added). City Council adopted the Plan *to 'guide*' future development of the [Property].' " (*Id*. at PAGEID 389) (emphasis added).

Municipal Planning Commission ("MPC") to base its *recommendations* on "the overall comprehensive planning goals of the City." It does not cite to the Comprehensive Plan specifically.

Plaintiffs' citation to City Code § 1174.04(b)(2) [presumably 1174.08(b)(2)] is also unpersuasive. That section provides that after receiving the MPC's recommendation "[t]he City Council may, by a majority of all its members, adopt or reject the proposed Ordinance, with or without change." The term "may" confirms the City's unfettered discretion to adopt or deny a requested zoning change, and undercuts Plaintiffs' arguments for entitlement to rezoning. *EJS Props.*, 698 F.3d at 856; *see also Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 573 (6th Cir. 2008). Indeed, "discretion forecloses a property interest." *PB&J Towing Serv. I & II, LLC v. Hines*, Case No. 20-6170, 2022 WL 390599, *3 (6th Cir. 2022).

### 2. Under Ohio law, a claim for entitlement to rezoning cannot be based on the City's purported words and actions.

Setting aside the fact that Plaintiffs do not state upon whose words or whose conduct they relied, a city representative's words and conduct cannot, as a matter of law, be the basis for Plaintiffs' purported property interest. If Plaintiffs' argument were accepted, it would be tantamount to "contract zoning." Contract zoning is defined as a transfer by a private contractor to a municipality of a substantial, material benefit in return for the approval of a zoning application. *Siwik v. City of Shaker Hts.*, 8th Dist. Cuyahoga No. 82390, 2003-Ohio-5502, ¶ 37 (Ohio App. 2003). Again, contract zoning is prohibited in Ohio. *Gillespie*, 584 N.E.2d at 1285.

On this point, Plaintiffs' exclusive reliance on *Nasierowski Bros. Inv. Co. v. City of Sterling Hts.*, 949 F.2d 890, 897 (6th Cir. 1991) misses the mark. In *Nasierowski*, the plaintiff began developing property ***in compliance with an existing zoning classification***. The plaintiff landowner had received preliminary approval of its development under existing zoning, and there was no question that its development complied with existing zoning. It was the city's subsequent zoning

change, which then effectively prohibited a previously permitted use, that created the issue. Plaintiffs' proposed use here was never permitted under the current zoning; hence, the request for rezoning. *Nasierowski* is not applicable.

Plaintiffs simply do not have a vested property interest under the Due Process Clause.

### C. Plaintiffs do not have a protected liberty interest in ignoring all zoning regulation to engage in whatever business they elect to pursue.

Plaintiffs' insistence that they possess a liberty interest to essentially do whatever they want is preposterous. The list of court-recognized liberty interests "'is short, and the Supreme Court has expressed very little interest in expanding it.'" *EJS Props*., 698 F.3d at 860 (quoting *Seal v. Morgan,* 229 F.3d 567, 574-575 (6th Cir. 2000)). This is particularly true in light of the Supreme Court's most recent rulings involving previously recognized liberty interests. The cases Plaintiffs cited are similar to the ones cited by the plaintiff in *EJS*. And in *EJS,* the Sixth Circuit readily disposed of those same flawed arguments: the general right to pursue business does not undermine a government's right to engage in discretionary decision-making, as is the case here. *Id.* at 859.

Accepting Plaintiffs' purported liberty interest argument would unreasonably expand the limited list of recognized liberty interests and make all zoning unenforceable. This absurd argument should be rejected out of hand.

## II. Plaintiffs' Allegations Fail to Demonstrate a Plausible Equal Protection Claim.

### A. Plaintiffs unsupported allegation that other applicants were "similarly situated" is insufficient as a matter of law.

Plaintiffs' argument that the City engaged in a standard process with all other applicants seeking to rezone, yet allegedly refused to engage them in that process, is practically identical to the one rejected in *Schellenberg v. Twp. of Bingham*, 436 F.App'x 587, 592 (6th Cir. 2011).[3]

---

[3] The Sixth Circuit rejected the similarly situated argument because "'bare allegations that other applicants, even all other applicants, were treated differently is insufficient' to establish an equal protection violation unless the plaintiff

5

Plaintiffs must allege *how* the other applicants were similar, beyond that they were also property-owners seeking to rezone or that the City subjected no other landowner to similar treatment.[4] A complaint must include specific allegations establishing the alleged similarities. *Andrews v. City of Mentor*, 11 F.4th 462, 474 (6th Cir. 2021); *Oberer Land Developers, Ltd. v. Sugarcreek Twp.*, No. 3:19-cv-82, 2020 U.S. Dist. LEXIS 53791, at *22-23 (S.D. Ohio Mar. 25, 2020) (the proposed density rate was no higher than those of two other identified properties); *Stebelton v. Bloom Twp. Bd. of Zoning Appeals*, No. 2:09-CV-808, 2010 U.S. Dist. LEXIS 39525, at *2-3 (S.D. Ohio Apr. 21, 2010) (plaintiff and another property owner both requested a permit to place a radio tower on their property).[5] Plaintiffs here provide only conclusory assertions that other unnamed owners were similarly situated PUD applicants with existing S-1 zoning, and UMCH previously owned the Property. (Complaint, ECF No. 1, PAGEID 28, ¶¶ 135-137). That's it and that is not enough.

### B. Plaintiffs failed to meet their "formidable" burden of pleading facts demonstrating that the City had no rational basis to treat them differently.

Under rational basis review, Plaintiffs cannot meet their burden in negating every conceivable basis for the City's decision. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012). Courts do not consider the wisdom of a challenged action. *Theile v. Michigan*, 891 F.3d 240, 244 (6th Cir. 2018). And the City did not need to offer any justification. *See Walker v. Bain,* 257 F.3d 660, 668 (6th Cir. 2001). It is enough that the reviewing court can fairly conceive of one. *Id.* In fact, the Complaint itself presents those reasons.[6]

---

shows that 'these other applicants were similarly situated.'" *Schellenberg*, 436 F.App'x at 592 (citation omitted).

[4] *See Loesel v. City of Frankenmuth*, 692 F.3d 452, 463 (6th Cir. 2012)) (plaintiffs who sought to build a Walmart identified two local properties as similarly-situated); *Ziss Bros. Constr. Co. v. City of Independence*, 439 Fed. App'x. 467, 476 (6th Cir. 2011) (plaintiff identified other developers during a similar time and presented similar problems).

[5] These factual allegations are relevant in that "disparate treatment of persons is reasonably justified if they are dissimilar in some material respect." *Trihealth, Inc. v. Bd. of Commrs.*, 430 F.3d 783, 790 (6th Cir. 2005).

[6] Complaint, ECF No. 1, PAGEID 2, 12-14, ¶¶ 4-5, 54-57, 63-64. Moreover, many of these same reasons are

Plaintiffs rely on *Loesel v. City of Frankenmuth*, 692 F.3d 452, but that case was tried to a ***jury*** that heard unreliable testimony and decided, ***factually***, to reject the city's claimed reason for denying the application. *Id*. at 464-466. *Loesel* is inapposite. Here, the Court must decide, ***as a matter of law***, whether, in its own judgment, there is any rational justification to deny Plaintiffs' application, which is simple enough. *See Flint Water Cases*, 384 F. Supp. 3d at 844-846.[7] Indeed, Plaintiffs here cannot demonstrate that the City's decision "is so unrelated to the achievement of any combination of legitimate purposes that the [C]ourt can only conclude that the [City's] actions were irrational." *Ziss Bros.*, 439 Fed. App'x. at 478 (citation omitted).

### C. Plaintiffs' allegations do not constitute animus sufficient to undermine the City's decision on rational basis review.

Plaintiffs rely on *Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead*, 98 F.Supp.2d 347, 354 (S.D. N.Y. 2000) and *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66, 97 S. Ct. 555 (1977)). But those cases involved religious and race discrimination subject to the strict scrutiny standard. No court has adopted the factors in those cases for conducting a rational basis review in class of one claims, nor have Plaintiffs articulated why this Court should do so. Equally important, "[t]he animus must be directed toward the class alleged," ***not*** the plan. *Ziss Bros.*, 439 Fed. Appx. at 478. In *Ziss Bros.*, the plaintiff's contention that the defendants "were trying to acquire the land to make . . . a public park out of it"—the exact same accusation Plaintiffs make here[8]—did not suffice because it did not demonstrate personal

---

recognized as legitimate bases for a city's zoning decisions. *See Taylor Acquisitions, L.L.C*, 313 F.App'x at 837; *see also, Ziss Bros. Constr. Co.*, 439 Fed. App'x. 467, 476-479 (6th Cir. 2011).

[7] Indeed, numerous courts have done just that and granted a motion to dismiss. *See Midkiff v. Adams Cnty. Reg'l Water Dist.,* 409 F.3d 758, 770-771 (6th Cir. 2005); *Gilmore v. Cnty. of Douglas, State of Nebraska*, 406 F.3d 935, 940 (8th Cir. 2005); *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021); *Operation Badlaw, Inc. v. Licking Cnty. Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1066 (S.D. Ohio 1992) *aff'd*, 991 F.2d 796 (6th Cir. 1993).

[8] (Complaint, ECF No. 1, PAGEID 2-3, 5, 13, 15, 26, ¶¶ 4-5, 15, 57, 58-59, 67, 125-126).

animus, but instead indicated animus directed toward the plan. *Id.* at 479.

### III.     Plaintiffs' First Amendment Claims Are Not Plausible As a Matter of Law.

In their Response, Plaintiffs incorrectly assert that all architecture is protected speech under the First Amendment, and thus their PUD application was, according to Plaintiffs, protected speech and the City's discretionary rejection of the application stifled their speech and formed the basis of a retaliation claim. (Response, ECF No. 22, PAGEID 423).[9] Plaintiffs' arguments in this regard are misplaced, inconsistent with applicable law, and frankly nonsensical.

As set forth above and in the City's Motion to Dismiss, Plaintiffs do not have a protected property interest in rezoning. That ends the First Amendment analysis. A determination that all applications for rezoning based on development plans and their design elements are *per se* protected speech, as Plaintiffs are urging here, would automatically make every discretionary rejection of those applications a violation of the First Amendment and therefore automatically result in constitutionally protected conduct. In essence then, ***such a determination would create a protected property interest where none otherwise exists***. That result would turn local zoning law on its proverbial head. More importantly, it is not the law. [10]

The bottom line is that the City had discretionary authority to reject Plaintiffs' application. Accordingly, the City's rejection of Plaintiffs' application for rezoning is not a violation of

---

[9] In their Response, Plaintiffs abandoned the theory in Count VI of their Complaint that the January 2022 amendment to the Comprehensive Plan is vague and restricts protected speech. (Complaint, ECF No. 1, at PAGEID 37-38, ¶¶ 183-186). Accordingly, Plaintiffs concede that this liability theory fails as a matter of law.

[10] Plaintiffs ignore the law and instead support their arguments by relying on a convoluted combination of the following red herrings: (1) an inapposite Second Circuit case discussing the sale of street artwork, not architecture; (2) a Washington state court case involving a church (i.e., a building with an easily discernible message); (3) two, decades-old academic secondary sources that have never been adopted by any federal circuit or district courts; and (4) dicta in a dissenting opinion from an Eleventh Circuit case in which the majority held the opposite of what Plaintiffs are urging here. (Response, ECF No. 22, PAGEID 423-424). It could hardly be otherwise—none of Plaintiffs' sources constitutes applicable law because, again, controlling law is adverse to Plaintiffs' Counts VI and VII. Indeed, Plaintiffs' application does not project an objectively discernible message under the test in *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

Plaintiffs' free speech under the First Amendment and cannot form the basis of Plaintiffs' separate First Amendment claims in Counts VI and VII. *EJS, Props.,* 698 F.3d at 863-864 (citing *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285, 104 S. Ct. 1058, 79 L. Ed. 2d 299 (1984)).[11]

Further, Plaintiffs' reliance on allegations that the public and City allegedly had emotional reactions to the application and its contents does not get them over the plausibility pleading hurdle required under *Iqbal/Twombly*. *See also*, *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010), citing *Twombly*, 550 U.S. at 570. It is equally, if not more plausible in the instant matter that any reaction by the City and the public was caused by the application's multiple high-density buildings, absence of a large park, or any number of other factors. To be sure, there are ***zero facts*** from which the Court could plausibly infer that ***the architectural design*** caused any reaction by the City and public. As such, Plaintiffs' application is neither constitutionally-protected speech, nor constitutionally-protected conduct.[12]

## IV. Plaintiffs Did Not Plead Facts Establishing a Regulatory Taking Claim.

Plaintiffs' unsupported assertions that they were deprived of all use of the Property, without further factual enhancement, are insufficient to support either type of regulatory taking claim.

---

[11] Plaintiffs nevertheless misrepresent dicta in *EJS Props.*, *supra*, as standing for the proposition that requests like Plaintiffs' here are protected. (Response, ECF No. 22, PAGEID 427) (quoting *EJS Props.*, 698 F.3d at 863). Not so. The Sixth Circuit did not decide whether zoning requests always equate to constitutionally-protected conduct. That argument was not raised. When the Sixth Circuit suggested that "zoning requests" generally qualify as petitioning, the Sixth Circuit was specifically citing *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010), in which the Court was addressing whether a permit-holding rickshaw company's complaints to the city about being treated differently from other cab-like permit holders ***under an existing zoning ordinance*** qualified as petitioning for purposes of a retaliation claim. *EJS Props.*, 698 F.3d at 863. That scenario is not applicable here. The Sixth Circuit in *EJS Props.* went on to reject claims similar to Plaintiffs' here. *Id.* at 863-864.

[12] *See, e.g., Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (citation omitted); *Ridgeview Partners, LLC v. Entwhistle*, 227 Fed. App'x. 80, 80-82 (2d Cir. 2007) (granting a summary order and holding that a site-plan application a complaint to public officials does not seek administrative or judicial redress) (citation omitted); *Old St. George's LLC v. Bianco*, S.D. NY No. 08 Civ. 5321, 2009 U.S. Dist. LEXIS 129396, *16-19 (May 8, 2009); *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373 (9th Cir. 1999) (holding that the plaintiff's application for use permits to develop a landfill was not petitioning the government for redress of grievances under the First Amendment.

Plaintiffs' know their properties for decades have been zoned S-1, C-2, C-3, and R-10,[13] and therefore have myriad nongovernmental economic uses. Moreover, Plaintiffs' did not plead a "partial taking" in that they allege the City's actions "prevent[] Lifestyle from putting its Property to ***any*** productive or economically beneficial use" and that this is "functionally equivalent to a direct appropriation" without any mention of *Penn Central*. (Complaint, ECF No. 1, PAGEID 41-42, ¶¶ 210, 212); *see also, Andrews*, 11 F.4th at 468 (where the plaintiff also alternatively pled that the zoning "amounts to a taking under the multi-factor *Penn Central* test.").

Plaintiffs' contention that the first *Penn Central* element for alleging a partial taking is met because they are limited to public/semi-public development also lacks support within the Sixth Circuit. *See Harris v. City of St. Clairsville*, No. C2-04-CV-1179, 2006 U.S. Dist. LEXIS 92523, at *50 (S.D. Ohio Dec. 21, 2006) (plaintiff was not denied economically viable use of the property because he was permitted to use it for institutional uses). Similarly, the Sixth Circuit rejected the contention that a rezoning denial interfered with reasonable investment-backed expectations where applicants, like Plaintiffs, here are aware of the property restrictions before entering into negotiations. *Loreto Dev. Co. v. Village of Chardon*, Nos. 97-3502/97-3656, 1998 U.S. App. LEXIS 12183, at *13 (6th Cir. June 4, 1998). Finally, the third *Penn Central* element is not met because Plaintiffs have not been literally or functionally "ousted from their Property," but instead retain all ownership rights consistent with S-1, C-2, C-3, and R-10 zoning, and the unsupported statements that the denial of their application is "functionally equivalent to the classic taking" need not be accepted. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

---

[13] Complaint, ECF No. 1, PAGEID 2-3, 7, 12, ¶¶ 2, 4-5, 26-27, 49-51.

Respectfully submitted,

/s/ Richard J. Silk, Jr.

| | |
|---|---|
| **THADDEUS M. BOGGS (0089231)** | **PAUL J. SCHUMACHER (0014370)** |
| **YAZAN S. ASHRAWI (0089565)** | Dickie, McCamey & Chilcote, P.C. |
| **JEREMY M. GRAYEM (0072402)** | 600 Superior Avenue East |
| Frost Brown Todd, LLC | Fifth Third Center, Suite 2330 |
| 10 W. Broad Street, Suite 2300 | Cleveland, Ohio 44114 |
| Columbus, Ohio 43215 | Telephone: 216.685.1827 / Fax: 888.811.7144 |
| Telephone: 614.464.1221 / Fax: 614.464.1737 | pschumacher@dmclaw.com |
| Tboggs@fbtlaw.com | |
| yashrawi@fbtlaw.com | **RICHARD J. SILK, JR. (0074111)** |
| jgrayem@fbtlaw.com | Dickie, McCamey & Chilcote, P.C. |
| | 250 Civic Center Drive, Suite 280 |
| *Attorneys for Defendant* | Columbus, Ohio 43215 |
| *City of Worthington, Ohio* | Telephone: 614.258.6000 / Fax: 888.811.7144 |
| | rsilk@dmclaw.com |

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, the foregoing *Defendant City of Worthington, Ohio's Reply in Support of Motion to Dismiss* was filed using the Court's ECF system, and notice of this filing will be sent to all parties by operation of the Court's ECF system.

/s/ Richard J. Silk, Jr.
**RICHARD J. SILK, JR. (0074111)**
*Attorney for Defendant*
*City of Worthington, Ohio*

11