# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **LIFESTYLE COMMUNITIES, LTD.**, *et al.*, | Civil Action 2:22-CV-1775 |
| Plaintiffs, | |
| v. | Judge Sarah D. Morrison |
| **CITY OF WORTHINGTON, OHIO**, | |
| Defendant. | Magistrate Judge Elizabeth P. Deavers |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT 08

*LIFESTYLE COMMUNITIES, LTD, et al.*

*vs.*

*CITY OF WORTHINGTON*

---

Deposition of

**Bonnie Michael**

November 15, 2023

---



614.460.5000 | www.priohio.com | pri@priohio.com

··1· · · ·IN THE UNITED STATES DISTRICT COURT
· · · · · · ·SOUTHERN DISTRICT OF OHIO
··2· · · · · · · ·EASTERN DIVISION

··3
· · LIFESTYLE COMMUNITIES,· · ·)
··4· LTD., ET AL.,· · · · · · ·)
· · · · · · · · · · · · · · · ·)
··5· · · · Plaintiffs,· · · · ·)
· · · · · · · · · · · · · · · ·)
··6· · · · vs.· · · · · · · · ·)· Case No.
· · · · · · · · · · · · · · · ·)· 2:22-cv-1775
··7· CITY OF WORTHINGTON,· · · )
· · OHIO,· · · · · · · · · · · )
··8· · · · · · · · · · · · · · )
· · · · · Defendant.· · · · · ·)
··9

10

11· · · · · · · · · · DEPOSITION

12· · · · · · ·of BONNIE D. MICHAEL

13

14· · · · Taken at Worthington City Hall
· · · · · · · 6550 North High Street
15· · · · · ·Worthington, Ohio 43085

16· · ·on November 15, 2023, at 11:56 a.m.

17

18· · · · · Reported by: Rhonda Lawrence

19

20· · · · · · · · · · -=O=-

21

22

23

24

1  APPEARANCES:

2

       Christopher L. Ingram
3      Emily J. Taft
       VORYS SATER SEYMOUR AND PEASE LLP
4      52 East Gay Street
       Columbus, Ohio 43215
5      614.464.6400
       clingram@vorys.com
6      ejtaft@vorys.com

7           on behalf of the Plaintiffs.

8
       Paul J. Schumacher
9      DICKIE McCAMEY
       600 Superior Avenue East, Suite 2330
10     Cleveland, Ohio 44114
       216.390.1795
11     pschumacher@dmclaw.com

12          on behalf of the Defendant.

13

14

15

16

17

18

19

20                    -=O=-

21

22

23

24

1 STIPULATIONS

2 It is stipulated by and among counsel

3 for the respective parties that the deposition

4 of BONNIE D. MICHAEL, the Witness herein, called

5 by the Plaintiff under the applicable Rules of

6 Federal Civil Court Procedure, may be taken at

7 this time by the stenographic court reporter and

8 notary public pursuant to notice; that said

9 deposition may be reduced to writing

10 stenographically by the court reporter, whose

11 notes thereafter may be transcribed outside the

12 presence of the witness; and that the proof of

13 the official character and qualification of the

14 notary is waived.

15 -=o=-

16

17

18

19

20

21

22

23

24

1  INDEX OF EXAMINATION

2  PAGE

3  BY MS. TAFT: 6

4

5

6  INDEX OF EXHIBITS

7  EXHIBIT  DESCRIPTION  PAGE

| | | | |
|---|---|---|---|
| 8 | 1 | 2014 Comprehensive Plan | 17 |
| 9 | 6 | Ordinance 04-2022 | 88 |
| 10 | 7 | Resolution 04-2022 | 89 |
| 11 | 34 | Email from Robinson, 9-20-20 | 80 |
| 12 | 40 | Memo from Greeson, 1-31-20 | 68 |
| 13 | 41 | Meeting Minutes, 9-21-20 | 84 |
| 14 | 42 | Florey Summary | 117 |
| 15 | 72 | Email chain | 41 |
| 16 | 76 | Email from Brown, 1-14-21 | 134 |
| 17 | 86 | Leaflet | 46 |
| 18 | 89 | Email chain | 53 |
| 19 | 92 | Email from Robinson | 114 |
| 20 | 120 | Email from Greeson, 7-16-15 | 26 |
| 21 | 121 | Statement Regarding UMCH Development Adopted Monday, 10-12-15 | 32 |
| 22 | | | |
| 23 | 122 | Email from Michael to Robinson | 44 |
| 24 | | | |

1        INDEX OF EXHIBITS (continued)

2   EXHIBIT              DESCRIPTION                    PAGE

3     123       Email chain                              48

4     124       Meeting Minutes, 1-2-18                  63

5     125       Email chain                              76

6     126       Email from Michael to                   112
                Greeson, 7-2-15
7
      127       Email from Michael, 1-12-20             122
8
      128       Email chain                             126
9
      129       Email chain                             132
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

 1    Q.  Did you vote for the resolution?

 2    A.  No, I did not.

 3    Q.  Why not?

 4    MR. SCHUMACHER:  Objection.  Relevance.

 5    You can answer.

 6    A.  Because I believe in transparency.  And

 7 if you listen to my -- if you listen to the

 8 video, you'll hear very much as to why I voted

 9 against it and did not vote in favor of it, and

10 very directly expressed my views.

11    Q.  Okay.  While you've been on City

12 Council, have they ever adopted a resolution

13 that was not first on the agenda?

14    MR. SCHUMACHER:  I'm sorry, can you

15 repeat that question?

16    Q.  While you've been on City Council, have

17 they ever approved a resolution that is not on

18 the agenda?

19    A.  You said first.  I thought you were in a

20 priority order.

21    MR. SCHUMACHER:  Yeah, that's why I

22 asked for some clarification.

23    A.  In the 28 years I've been on City

24 Council, there has not been a resolution or an

1  ordinance that has been passed except for this

2  one that had not been on a prior agenda that had

3  been publicly publicized.

4     Q.  And this resolution only applies to the

5  UMCH property; is that right?

6     A.  Yes.

7     Q.  So looking at the actual text of the

8  update, the 2022 comprehensive plan update,

9  however you want to phrase it, going to the

10  guiding principles, the first guiding principle

11  says, it is important that the development of

12  the property be considered and executed

13  holistically as an integrated whole.

14        Do you see that?

15     A.  Yes, I see it.

16     Q.  What does that mean?

17     A.  I'm not sure.  I didn't write it.

18     Q.  What do you think a developer should

19  take from that first guiding principle?

20     A.  I'm not sure.  Basically to not

21  piecemeal -- I would guess not to have piecemeal

22  development.

23     Q.  Okay.  And looking at the second one,

24  the guiding principle says, develop the property

1  in a manner that is extraordinary and that

2  serves the long-term interest of the community.

3          Do you see that?

4          MR. SCHUMACHER: Objection. That's not

5  the entire bullet point.

6      Q.  What does that phrase mean?

7      A.  I don't know.  You'd have to ask

8  Mr. Robinson or whoever else drafted this.

9      Q.  Based on these guiding principles, what

10 do you think can be done on the property?

11     A.  I would go to the general components at

12 the very end, and what's listed there would be

13 what I would interpret.  That's where it is.

14 And it's very similar to what was on the prior

15 plan.  That is a combination of some green

16 space, some commercial development, and some

17 residential.

18     Q.  So what does the first general component

19 there, a large contiguous green space, mean?

20     A.  I have no idea.

21     Q.  How much green space?

22     A.  I don't know.

23     Q.  Where would someone look to figure out

24 how much green space?

 1    A.   I do not think that's something that --
 2   I have no idea where you get an answer from
 3   them.  I just don't know.
 4        Q.   Okay.  What is commercial development
 5   that's, quote, revenue generation for the city?
 6        A.   70-plus percent of the city's budget is
 7   income tax.  So revenue generated would be some
 8   business that would generate income tax for the
 9   city.
10        Q.   So what sort of businesses does that
11   entail?
12        A.   Any business that would pay income tax
13   to the city.
14        Q.   Where are these new businesses -- where
15   are the workers supposed to live?
16        A.   I have no idea.
17        Q.   Is there sufficient housing within
18   Worthington to support that revenue generation
19   for the city?
20             MR. SCHUMACHER:  Objection.  Way past
21   relevant or proportionate views of the case, but
22   you can answer.
23        A.   I have no idea.  We are doing a housing
24   study for the City of Worthington.  When that

 1  housing study comes back, we'll have a much

 2  better answer for your question.

 3      Q.  So what is the difference between

 4  revenue generation for the city and the second

 5  term in there, select service-oriented retail?

 6      A.  I have no idea.

 7      Q.  Do you know what select service-oriented

 8  retail means?

 9          MR. SCHUMACHER:  Objection.  Asked and

10  answered.

11      A.  I can only repeat what's in here.  I can

12  repeat the words that are in here, because I

13  really don't know what select service-oriented

14  retail means.  I'd suggest it means retail,

15  whatever retail.

16      Q.  So looking at the residential housing,

17  what does creatively executed mean?

18      A.  I have no idea.

19      Q.  How about harmonious and overall mass in

20  scale?

21      A.  I would probably say go back to the --

22  go to the guidelines and see what guidelines

23  say, if they define those.  I don't know if the

24  guidelines define those or not.  And that's

1  something more the Municipal Planning Commission

2  would have guidance on the definition.

3     Q.  When you say guidelines, do you mean the

4  guiding principles in this same document, or the

5  city code?

6     A.  Both.

7     Q.  Where in the city code are those

8  guidelines that you're referring to?

9     A.  There is somewhere in the city code --

10 and I don't know if -- there is a list of --

11 development proposals coming through the

12 Municipal Planning Commission.  There is a list

13 of criteria that need to be addressed regarding

14 the approval or disapproval of the plan, and

15 that's what I would be referring to.

16    Q.  So are those procedural requirements for

17 an application?

18       MR. SCHUMACHER:  Objection to the extent

19 you're asking for a legal opinion.

20    A.  You'd have to take a look at those.

21 They're in the code.  They're codified.  And

22 they basically -- whenever there's something

23 goes through the Municipal Planning Commission

24 or if it comes up on appeal to council, there is

1  a list of these are the items that need to be

2  addressed whether you're approving or

3  disapproving something.  And there's about 15 --

4  I don't know how many, but there's a list.

5     Q.  Do those say how much contiguous green

6  space the property needs to have for approval?

7     A.  You'd have to pull up the ordinance

8  because I don't memorize them.

9     Q.  So are you referencing the plan unit

10  development application requirements in the

11  code?

12     A.  I have legal counsel that gives us the

13  information when something comes up.  So I do

14  not have the expertise to sit there and answer

15  questions about exactly what's in the code,

16  where in the code, and with that.  When it comes

17  up, we have legal counsel that provides advice

18  to us.

19     Q.  Okay.  How much large contiguous green

20  space do you think an applicant needs to provide

21  to get it approved?

22     A.  I have no idea.

23         MR. SCHUMACHER:  Objection.  Relevance.

24     Q.  How much would it need to get your vote?

1      MR. SCHUMACHER:  Objection.

2      A.  I have no idea.

3      Q.  You don't know?

4      A.  No.

5      Q.  How would you judge an application that
6  comes in for the property?

7      MR. SCHUMACHER:  Objection.  Relevance.
8  Hypothetical.

9      A.  Hypothetical.  It would have to go
10  through the Municipal Planning Commission and
11  we'll see what MPC says and what their results
12  are and what their recommendations are.

13      Q.  What are you looking for in an
14  application?

15      MR. SCHUMACHER:  Objection.  Relevance.

16      A.  Whatever the MPC is looking at and
17  evaluating what the MPC says.

18      Q.  What does the MPC look at?

19      A.  Well, you'll have to ask them.

20      Q.  You don't know the process?

21      A.  The process has a whole thing down
22  there.  They follow the process.  Then they send
23  their recommendation up to council.  And you're
24  asking me a question hypothetically about

1  something that is nowhere around us, and I have

2  no idea what the Municipal Planning Commission

3  would say if this came in front of them.

4    Q.  So would you adopt whatever the MPC

5  recommendation is, or would you analyze it

6  separately on your own?

7        MR. SCHUMACHER:  Same objections.

8        You may answer.

9    A.  Evaluate.

10    Q.  And so what would you evaluate when

11  you're looking at an application?

12        MR. SCHUMACHER:  Same objection.

13    A.  Everything you'd evaluate when somebody

14  that does an appeal.  If somebody doesn't like a

15  decision that they get, they appeal.  They

16  appeal to council.  There's a whole structure of

17  what you go through, and those are the things I

18  would analyze.

19    Q.  And what are those things?

20    A.  I don't memorize the statute.  There's

21  about 10 or 15 of them.  I don't know them

22  offhand.

23    Q.  Okay.  And so you have no threshold for

24  here's how much park I need to approve an

1  application?

2·········MR. SCHUMACHER:· Objection.

3  Argumentative.

4·····Q.··You can answer.

5·····A.··I don't have an answer.

6·····Q.··Okay.· How much green space was required

7  under the 2014 comprehensive plan?

8·········MR. SCHUMACHER:· Objection.

9·····A.··It did not have a specific amount.· It

10 just basically said there should be a green

11 space.

12····Q.··Some green space?

13····A.··I'd have to pull it back out again, but

14 it did not give a specific amount.

15····Q.··And where should a developer go to look

16 at how much green space is needed?

17····A.··I have no idea.

18·········MR. SCHUMACHER:· Objection.

19 Argumentative.· Asked and answered.

20····Q.··I'm sorry, was your response I have no

21 idea to my last question?

22·········MR. SCHUMACHER:· She's looking at

23 Exhibit 1 now.

24····A.··I would say that even though there's

1 CERTIFICATE

2 STATE OF OHIO :
SS:
3 COUNTY OF FRANKLIN :

4        I, Rhonda Lawrence, a stenographic court reporter and notary public in and for the
5 State of Ohio, duly commissioned and qualified, do hereby certify that the within-named BONNIE
6 D. MICHAEL was first duly sworn to testify to the truth, the whole truth, and nothing but the
7 truth in the cause aforesaid; that the testimony then given was taken down by me stenographically
8 in the presence of said witness, afterwards transcribed; that the foregoing is a true and
9 correct transcript of the testimony; that this deposition was taken at the time and place in
10 the foregoing caption specified.

11        I certify that I am not a relative or employee of any attorney or counsel employed by
12 the parties hereto and that I am not financially interested in the action.  I further certify
13 review of the transcript was not requested.

14        In witness whereof, I have hereunto set my hand at Columbus, Ohio, on this 30th day
15 of November, 2023.

16

17

18

19

20

21 *Rhonda Lawrence*
Rhonda Lawrence
22 Notary Public, State of Ohio

23 My commission expires:  October 9, 2028

24



# City Council Statement Regarding UMCH Development
## Adopted Monday, October 12, 2015

Whereas, the City has had a long established process for reviewing development applications with consideration by the Municipal Planning Commission (MPC);

Whereas, any changes in zoning approved by the MPC must be approved by City Council with additional opportunity for public comment;

Whereas, this process provides notice to the public and an opportunity for the public to review and comment on the application and the MPC has delayed consideration of applications when it considers sufficient input has not been received;

Whereas, this process has successfully helped the City to develop and redevelop areas of the City;

Whereas, this process is being followed in the development of the United Methodist Children's Home and the City encouraged UMCH and its developer to present potential plans to the public for discussion;

Whereas, plans were discussed with neighbors and at a special MPC public meeting;

Whereas, attendees at the meeting had significant opposition to the plan and City Council sent a letter to the developer stating the citizens' comments should be considered;

Whereas, no development plan has been submitted to the City; and,

Whereas, some citizens have indicated that the City Council supports the preliminary plan presented by the developer.

Now let it be known that City Council:

- Has never supported nor does it support the plan presented by UMCH and the developer,
- Supports the proven process, including public input, for considering development issues, and,
- Will only support UMCH redevelopment that enhances the community and meets, in the broadest sense, the objectives of the Comprehensive Plan.



Worthington 054603

## McTigue Open Records

From: Bonnie Michael <bdmichael@sbcglobal.net>
Sent: Thu 7/02/2015 2:06 PM (GMT-00:00)
To: Matt Greeson <MGreeson@ci.worthington.oh.us>;Stewart Robin <RStewart@ci.worthington.oh.us>
Cc:
Bcc:
Subject: Another thought

I was thinking about the idea of the city having a bond issue regarding buying the UMCH property.

Our community has traditionally funded our schools with property tax. If we were to increase the property tax significantly for the purchase of UMCH, there would not be enough capacity, in the community, to be able to fund additional projects and/or operating expenses, for the schools

I do not think that those are suggesting the city by this property, I looking at the long-term impact this could have on the schools, and funding for the schools.

Our homeowners can only pay so many taxes.

Bonnie

Sent from my iPhone

_____ Information from ESET Endpoint Antivirus, version of virus signature database 12334 (20150930) _____

The message was checked by ESET Endpoint Antivirus.

http://www.eset.com



EXHIBIT 126