# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LIFESTYLE COMMUNITIES, LTD**., *et al.*, | ) | Civil Action 2:22-CV-1775 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Judge Sarah D. Morrison |
| | ) | |
| **CITY OF WORTHINGTON, OHIO**, | ) | |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 20

*LIFESTYLE COMMUNITIES*

*vs.*

*CITY OF WORTHINGTON*

Deposition of

**Beth Kowalczyk**

November 10, 2023



614.460.5000 | www.priohio.com | pri@priohio.com

1          IN THE UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF OHIO
2                 EASTERN DIVISION

3    LIFESTYLE COMMUNITIES,     )
     LTD., ET AL.,              )
4                               )
          Plaintiffs,           )
5                               )
          vs.                   )   Case No.
6                               )   2:22-cv-1775
     CITY OF WORTHINGTON,       )
7    OHIO,                      )
                                )
8         Defendant.            )

9

10

11                    DEPOSITION

12               of BETH KOWALCZYK

13

14        Taken at Worthington City Hall
              6550 North High Street
15            Worthington, Ohio 43085

16

17        on November 10, 2023, at 8:58 a.m.

18

19        Reported by: Julia Lamb, RPR, CRR

20

21                    -=0=-

22

23

24

1    APPEARANCES:

2        Christopher L. Ingram
         VORYS SATER SEYMOUR AND PEASE LLP
3        52 East Gay Street
         Columbus, Ohio 43215
4        614.464.5480
         clingram@vorys.com
5
                 on behalf of the Plaintiffs.
6

7        Paul J. Schumacher
         DICKIE McCAMEY
8        600 Superior Avenue East, Suite 2330
         Cleveland, Ohio 44114
9        216.390.1795
         pschumacher@dmclaw.com
10
                 on behalf of the Defendant.
11

12

13

14

15

16

17

18                        -=0=-

19

20

21

22

23

24

 1                    STIPULATIONS

 2              It is stipulated by and between

 3   counsel for the respective parties that the

 4   deposition of BETH KOWALCZYK, the Witness

 5   herein, called by the Plaintiffs under the

 6   applicable Rules of Federal Civil Court

 7   Procedure, may be taken at this time by the

 8   stenographic court reporter and notary public by

 9   agreement of counsel; that said deposition may

10   be reduced to writing stenographically by the

11   court reporter, whose notes thereafter may be

12   transcribed outside the presence of the witness;

13   and that the proof of the official character and

14   qualification of the notary is waived.

15                    -=0=-

16

17

18

19

20

21

22

23

24

1                    INDEX OF EXAMINATION

2                                              PAGE

3  BY MR. INGRAM:                              6

4

5

6                    INDEX OF EXHIBITS

7  EXHIBIT            DESCRIPTION              PAGE

8    1     Land Use Plan                       62

9    6     Ordinance No. 04-2022              116

10   7     Resolution No. 04-2022             124

11   10    City Council Agenda, 1-18-22       111

12   11    Email, 1-18-22, with attached      123
           document
13
     32    Memorandum, 1-22-19                 51
14
     40    Email, 1-31-20, with attached       66
15         Memorandum, 1-31-20

16   41    City Council Minutes, 9-21-20      114

17   42    One-page email chain with           79
           attached Summary of Phases
18         for Development of the UMCH
           Property
19
     43    City Council Minutes,               92
20         12-13-21

21   76    Email, 1-14-21, with attached       84
           Lifestyle Communities
22         Development Application for
           the UMCH Site, Questions from
23         City Councilmembers

24

| 1  | 98  | WARD Presents Proposals for UMCH Site (January 2018) | 29  |
| 2  |     |                                                     |     |
|    | 110 | Email, 2-28-18, with attachments                    | 23  |
| 3  |     |                                                     |     |
| 4  | 111 | Two-page email chain                                | 42  |
| 5  | 112 | Ten-page email chain                                | 44  |
| 6  | 113 | Three-page email chain                              | 58  |
| 7  | 114 | Three-page email chain, 10-5-20                     | 71  |
| 8  |     |                                                     |     |
|    | 115 | Two-page email chain, 11-1-20                        | 81  |
| 9  |     |                                                     |     |
|    | 116 | Two-page email chain, 3-31-21                        | 88  |
| 10 |     |                                                     |     |
|    | 117 | One-page Facebook post                              | 109 |
| 11 |     |                                                     |     |
|    | 118 | Two-page Facebook post                              | 110 |
| 12 |     |                                                     |     |
|    | 119 | Two-page email, 1-21-22                             | 144 |
| 13 |     |                                                     |     |

14

15

16

17

18

19

20

21

22

23

24

 1   property to be one of many issues that are

 2   significant to this community.

 3       Q.  Okay.  So you do?

 4       A.  I don't think that this community --

 5   this issue is an exclusively significant issue.

 6   It's one of many.

 7       Q.  Do you agree that the property should be

 8   rezoned to a planned unit development?

 9           MR. SCHUMACHER:  Objection.  Relevance.

10           You can answer.

11       A.  I would like to see something happen on

12   that property.  Obviously there's a process that

13   that goes through.

14       Q.  Okay.  But my question's a little bit

15   different.  You know, looking at -- do you agree

16   that the property should be rezoned to a planned

17   unit development or something else?

18           MR. SCHUMACHER:  Objection.  You just

19   asked that question.

20       A.  I would like to see something happen on

21   that property that would benefit the community.

22   The particular mechanism through which that

23   happens I don't have an opinion on.  That's a

24   process that needs to be determined.

1      Q.  Okay.  And in your mind what would

2  benefit the community?  In other words, what are

3  you referring to that could be redeveloped on

4  the site?

5          MR. SCHUMACHER:  Objection.  Asked and

6  answered.

7      A.  That we have something that supports our

8  need for economic development, so commercial,

9  that certainly supports housing options for the

10  city, and that there be some park space, some

11  greenspace that is available for use by

12  residents and by the city, and frankly some

13  mixed use would be welcome.

14      Q.  So mixed use development?

15      A.  I guess if that's --

16          MR. SCHUMACHER:  Objection.

17      A.  I guess if that's what you want to

18  characterize what I just said, but what I said

19  is what I said.

20                      -=0=-

21          (Deposition Exhibit 111 marked.)

22                      -=0=-

23  BY MR. INGRAM:

24      Q.  Handing you what's being marked as

1              MR. SCHUMACHER:  Same objection.

2     A.  Same answer.

3     Q.  Exhibit 7 replaces Exhibit 1 -- is that

4  correct?  -- in the city's comprehensive plan.

5     A.  It's an amendment to the 2014

6  comprehensive plan amendment, and yes, my

7  understanding is it would replace that 2014

8  amendment.

9     Q.  And so with respect to Exhibit 7, this

10  plan will guide and facilitate any future

11  development process for Lifestyle's property,

12  correct?

13     A.  This 2022 amendment would essentially

14  serve the same purpose as the prior amendment

15  did in terms of being a guide for city staff and

16  for city council in evaluating development

17  proposals on the property.

18     Q.  And there are guiding principles,

19  correct?

20     A.  Yes, there on page 1 it says guiding

21  principles.

22     Q.  The first guiding principle is that the

23  development of Lifestyle's property be

24  considered and executed holistically as an

 1  integrated whole.  Is that correct?

 2       MR. SCHUMACHER:  Objection.  That

 3  misstates the principle.

 4       A.  That's what the document says.  That it

 5  is important that the development of the

 6  property be considered and executed holistically

 7  as an integrated whole.

 8       Q.  So can Lifestyle move forward with an

 9  application to rezone a portion of its property

10  as opposed to the entire site?

11       MR. SCHUMACHER:  Objection to the

12  hypothetical nature, but you may answer.

13       A.  This amendment and the comprehensive

14  plan are guidance documents.  So Lifestyle could

15  propose to develop -- they could put forth a

16  proposal to develop the property in any manner

17  that they want, and it would be evaluated

18  against this and other things.

19       Q.  Okay.  If they move forward with an

20  application that only sought to develop, say, 10

21  of the 40 acres of that property, it would be

22  contrary to this guiding principle, correct?

23       MR. SCHUMACHER:  Objection.

24  Hypothetical and argumentative.

1      A.  It would depend on what the proposal is.

2  It is a hypothetical.  I'm not going to give a

3  definitive answer on it.

4      Q.  Okay.  As a member of city council, what

5  is your understanding of this first guiding

6  principle, then?

7      A.  Exactly what it says.  It's important

8  that the development of the property be

9  considered and executed holistically as an

10  integrated whole, and that language is part of

11  an amendment to the comprehensive plan which is

12  a guide to city council and to the city when

13  evaluating proposals.

14      Q.  So the term executed -- I'm sorry,

15  strike that.

16         The phrase executed holistically as an

17  integrated whole, what does that mean to you as

18  a member of city council?

19         MR. SCHUMACHER:  Objection.

20         You can answer.

21      A.  Well, ideally the consideration would be

22  that there be a proposal that incorporates the

23  majority of the property and that it's

24  integrated in a sense that, you know, things

1  work together, but again, it really depends.  I

2  mean, in terms of evaluating from a land use

3  perspective, I can't say that.  I'm not an

4  expert on how those terms are interpreted from

5  that perspective.

6     Q.  Is this something that you would rely

7  upon the city staff for?

8     A.  I would -- that would be part of my

9  review if something were to come before me,

10  would be city staff interpreting how a proposed

11  development would or would not apply to these

12  principles.

13     Q.  And with respect to the fourth guiding

14  principle, we seek an outcome on this land that

15  is distinctive, exceptional, and expressive of

16  Worthington's own values and community ethos.

17  Do you see that?

18     A.  I see that.

19     Q.  As a member of city council what is your

20  understanding of this guiding principle

21  concerning Lifestyle's property?

22     A.  I don't understand your question.  Are

23  you -- what are you asking me to do with this

24  statement?

1      Q.  What is your understanding of what this

2   means as a guiding principle dictating the

3   development of that property across the street?

4      A.  I mean, they're aspirational goals of

5   what we would like to see on the property.  I

6   mean -- and that it fits within the framework of

7   what we see in Worthington, and probably, you

8   know, frankly the rest of the comprehensive plan

9   has a lot of information on these items.

10      Q.  Okay.  I'm going to tell you I have no

11   idea what this means and that's why I'm asking

12   you as a member of city council what -- what

13   type of plan or development would be expressive

14   of Worthington's community ethos?  What does

15   that mean?

16          MR. SCHUMACHER:  Objection.  Move to

17   strike the comment of counsel and argumentative.

18          Is there a question?

19      A.  Yeah.  I'm sorry, what's the question?

20          MR. INGRAM:  You can read back my

21   question, please.

22              (Record read as requested.)

23          MR. SCHUMACHER:  Same objection, but go

24   ahead.

1      A.  I'm not going to attempt to define

2  community ethos.  What I can tell you is an

3  example of something that I think fits within

4  this now is the Stafford Village to the Hartford

5  development.

6      Q.  Okay.  Why's that?

7          MR. SCHUMACHER:  Can I have a continuing

8  objection to the hypothetical nature of these

9  questions?

10         MR. INGRAM:  Sure.

11         MR. SCHUMACHER:  Thank you.

12     A.  It exhibits -- it fits within the

13 neighborhood.  It serves a purpose for the

14 community.  You know, I would want to have more

15 time to think about it so I'm not going to

16 expound on that.  It just -- that's something

17 that came to my mind in looking at this, but I

18 think what you said was that we -- I in

19 particular -- I'm not a planner.  I wouldn't

20 necessarily know how to interpret this as a

21 planner, but would rely on the city staff to

22 provide some guidance in that area.

23     Q.  Turning to the general components on the

24 following page of resolution 4-2022, the first

1    general component makes reference to a large

2    contiguous greenspace.  Do you see that?

3        A.  Yes.

4        Q.  Large contiguous greenspace is

5    undefined, correct?

6            MR. SCHUMACHER:  Objection.

7    Argumentative.

8        A.  It says a large contiguous greenspace.

9        Q.  Okay.  How large of a contiguous

10    greenspace is necessary to be approved under

11    this general component?

12        A.  I'll go back to this is a guidance

13    document that is used to evaluate proposals, and

14    so city staff would have some -- as they look at

15    a proposal, would look at these items and give

16    some feedback to us regarding whether they

17    thought it would apply.  I mean, there's things

18    in here, there's things in the comprehensive

19    plan.  They don't all have specific definitions.

20    They're guiding documents.

21        Q.  So there needs to be back and forth

22    between city staff, city council, and the

23    applicant, correct?

24            MR. SCHUMACHER:  Objection.  That

1    mischaracterizes her testimony.

2        A.  It's not what I said.  I said as they

3    evaluate this and provide city council

4    information about how they evaluate a proposal

5    against this plan.

6        Q.  Okay.  And in your mind what constitutes

7    a large contiguous greenspace as a member of

8    city council applying this plan to the rezoning

9    of the property across the street?

10        MR. SCHUMACHER:  Which application we

11    talking about?

12        A.  Yeah, I don't know what application

13    you're talking about, and honestly, I wouldn't

14    be able to answer that question.

15        Q.  Okay.  And with respect to a greenspace,

16    what is an acceptable greenspace for that

17    property?  What does that mean?

18        MR. SCHUMACHER:  Same objection and

19    asked and answered.

20        A.  And I'll give you the same answer.  I

21    think it would be evaluated based on city

22    staff's recommendations and evaluation of the

23    proposal.

24        Q.  So other than referring to city staff's

1   evaluation of the proposal, what else, if

2   anything, would you refer to to understand what

3   large contiguous greenspace would be acceptable

4   for the property across the street?

5        MR. SCHUMACHER:  Objection.  Vague.

6     A.  Yeah, I don't even know how to answer

7   that question.  My process is when a proposal is

8   brought before council, I receive information

9   from city staff to evaluate that proposal, and I

10   rely on that information.  And as I said before,

11   when a development is being proposed anywhere in

12   the city, if there are concerns or support or

13   any kind of feedback from city residents, then I

14   take that into consideration as well.

15     Q.  As a member of city council where would

16   you direct Lifestyle to discern what this first

17   general component requires?

18     A.  Probably the feedback that they've

19   already received from the MPC and city staff

20   that was outlined in the city memo related to

21   the existing -- I mean, this document isn't --

22   it's a little shorter, but it really doesn't

23   change I think the components of what we're

24   looking for in the property based on the

 1  comprehensive plan amendment.  And you know, I

 2  think there was some discussion of greenspace in

 3  that response as well as other items where they

 4  were evaluated against the plan amendment.

 5      Q.  With respect to the third general

 6  component where it says that residential

 7  housing, though requiring a rezoning, is

 8  desirable, if it is creatively executed, do you

 9  see that?

10      A.  I do see that.

11      Q.  As a member of city council what

12  constitutes creatively executed residential

13  housing for this property?

14          MR. SCHUMACHER:  Same objections.

15      A.  Yeah, I'm not exactly sure how to define

16  creatively executed, and I would hesitate to do

17  that in any way that would be -- I mean, it's

18  just my opinion.  It's not, again, something

19  that's evaluated by city staff who are experts

20  in planning so I don't know if there's some

21  specific definition that could be applied there.

22      Q.  So you're not aware of any definition

23  that could be applied there.  Is that fair?

24          MR. SCHUMACHER:  That's not what she

1    said.  Objection.

2        A.  Yeah, that's not what I said.

3        Q.  Okay.  Where's it defined then?

4        MR. SCHUMACHER:  Objection.  She just

5    gave you her answer.

6        A.  I am not aware of whether there is a

7    definition used by city planners related to how

8    housing is executed and in this instance

9    creatively executed.  There may be some

10   definition I'm not aware of.

11       Q.  Okay.  As a member of city council where

12   would you direct Lifestyle to discern what

13   constitutes creatively executed residential

14   housing on its property?

15       A.  This is planning, land use and planning

16   execution.  I would talk to city staff or

17   planners.  I am not certain.

18       Q.  With respect to the second general

19   component what constitutes acceptable select

20   service-oriented retail for this property in

21   your mind?

22       A.  I'll go back to I believe that is

23   something that city staff would evaluate in

24   terms of need, and that could change depending

1  on when a proposal's brought forth, but there's

2  always evaluation of what the city needs in

3  terms of economic development and the type of

4  mixed use development that would suit a

5  neighborhood.

6      Q.  Anything else?

7      A.  No.

8      Q.  And you voted against resolution 4-2022,

9  correct?

10     A.  Yes.

11     Q.  In your experience has city council ever

12  considered legislation that affects only one

13  property owner without providing that property

14  owner advanced notice?

15         MR. SCHUMACHER:  Objection.  Relevance.

16         But you can answer.

17     A.  Can you restate the question?

18     Q.  In your experience has city council ever

19  considered legislation that affects only one

20  property owner without providing that property

21  owner advance notice?

22     A.  Legislation I consider an ordinance.

23     Q.  All right.  How about resolutions?

24         MR. SCHUMACHER:  Did you finish your

1                          CERTIFICATE

2    STATE OF OHIO      :
                              SS:
3    COUNTY OF FRANKLIN :

4           I, Julia Lamb, RPR, CRR, a
     stenographic court reporter and notary public in
5    and for the State of Ohio, duly commissioned and
     qualified, do hereby certify that the
6    within-named BETH KOWALCZYK was first duly sworn
     to testify to the truth, the whole truth, and
7    nothing but the truth in the cause aforesaid;
     that the testimony then given was taken down by
8    me stenographically in the presence of said
     witness, afterwards transcribed; that the
9    foregoing is a true and correct transcript of
     the testimony; that this deposition was taken at
10   the time and place in the foregoing caption
     specified.
11
            I do further certify that I am not a
12   relative, employee or attorney of any of the
     parties hereto; that I am not a relative or
13   employee of any attorney or counsel employed by
     the parties hereto; that I am not financially
14   interested in the action; and further, I am not,
     nor is the court reporting firm with which I am
15   affiliated, under contract as defined in Civil
     Rule 28(D).
16
            In witness whereof, I have hereunto
17   set my hand at Columbus, Ohio, on this 20th day
     of November, 2023.
18

19

20          *Julia Lamb*

21          Julia Lamb, RPR, CRR
22          Notary Public, State of Ohio

23   My commission expires:  10-10-27

24

< **Beth Kowalczyk - Worthington...**  Q

**Posts**  About  Videos  More ▾

 **Beth Kowalczyk - Worthington City Council**  ...

Dec 19, 2021 · 🌐

Worthington City Council voted unanimously at its December 13, 2021 meeting to deny the development proposal submitted by Lifestyle Communities (LC) for the former United Methodist Children's Home (UMCH) property.

If LC wants to submit a new application, it must wait at least six months after the October 2021 Municipal Planning Commission recommendation of denial, which would be mid-April 2022.

For more information, including a link to the meeting, check out the city's web page devoted to this proposal: https://worthington.org/624/UMCH-Development-Proposal



dispatch.com
**Worthington City Council denies Lifestyle Communities' rezoning request to redevelop form...**

      
EXHIBIT

117