# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LIFESTYLE COMMUNITIES, LTD.**, *et al.*, | ) | Civil Action 2:22-CV-1775 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Judge Sarah D. Morrison |
| | ) | |
| **CITY OF WORTHINGTON, OHIO**, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge Elizabeth P. Deavers |
| | ) | |

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

# EXHIBIT 22

*LIFESTYLE COMMUNITIES*

*vs.*

*CITY OF WORTHINGTON*

Deposition of

**Eric Gardner**

January 30, 2024



614.460.5000 | www.priohio.com | pri@priohio.com

1

IN THE UNITED STATES DISTRICT COURT
2           SOUTHERN DISTRICT OF OHIO
                EASTERN DIVISION
3

4   LIFESTYLE COMMUNITIES,        )
    LTD., ET AL.,                 )
5                                 )
          Plaintiffs,             )
6                                 )
          vs.                     )   Case No.
7                                 )   2:22-cv-1775
    CITY OF WORTHINGTON,          )
8   OHIO,                         )
                                  )
9         Defendant.              )

10

11

12                    DEPOSITION

13        of ERIC J. GARDNER, MAI, CCIM

14

15              Taken at law firm of
            VORYS SATER SEYMOUR & PEASE
16              65 East Gay Street
              Columbus, Ohio 43215
17

18

        on January 30, 2024, at 11:16 a.m.
19

20        Reported by: Rhonda Lawrence

21

22                    -=0=-

23

24

1    APPEARANCES:

2

3    Christopher L. Ingram
     VORYS SATER SEYMOUR AND PEASE LLP
     52 East Gay Street
4    Columbus, Ohio 43215
     614.464.5480
5    clingram@vorys.com

6         on behalf of the Plaintiffs.

7

8    Yazan S. Ashrawi
     FROST BROWN TODD
     One Columbus, Suite 2300
9    10 West Broad Street
     Columbus, Ohio 43215
10   614.559.7202
     yashrawi@fbtlaw.com

11
          on behalf of the Defendant.
12

13

14

15

16

17

18

19                    -=0=-

20

21

22

23

24

1                    STIPULATIONS

2              It is stipulated by and between

3    counsel for the respective parties that the

4    deposition of ERIC J. GARDNER, MAI, CCIM, the

5    Witness herein, called by the Defendants under

6    the applicable Rules of Federal Civil Court

7    Procedure, may be taken at this time by the

8    stenographic court reporter and notary public

9    pursuant to notice; that said deposition may be

10   reduced to writing stenographically by the court

11   reporter, whose notes thereafter may be

12   transcribed outside the presence of the witness;

13   and that the proof of the official character and

14   qualification of the notary is waived.

15                       -=0=-

16

17

18

19

20

21

22

23

24

1                    INDEX OF EXAMINATION

2                                                  PAGE

3    BY MR. ASHRAWI:                               5

4

5

6                    INDEX OF EXHIBITS

7    EXHIBIT             DESCRIPTION              PAGE

8      1      Real Estate Appraisal &         17
              Market Damages Analysis,
9              Restricted Report Format

10     2      Letter from Gardner to          22
              Miller, 4-11-23
11
       3      Appraisal Process and Product   29
12            Types - Summary by Gardner
              Street
13
       4      Advisory Opinion 38             43
14
       5      The Appraisal of Real Estate    70
15
       6      Horner Appraisal Report         88
16
       7      Weiler Retrospective            88
17            Appraisal

18

19

20

21

22

23

24

1     A.  We're in Blue Ash.

2     Q.  Blue Ash.

3             -=0=-

4      (Deposition Exhibit 1 marked.)

5             -=0=-

6  BY MR. ASHRAWI:

7     Q.  I'm going to hand you what I think

8  you've already got in front of you and what

9  we'll mark as Gardner Exhibit 1.

10     Mr. Gardner, are you familiar with this

11  document?

12     A.  Yes.

13     Q.  This is the restricted report that you

14  prepared for this case, correct?

15     A.  Yes.

16     Q.  Is this a complete and accurate copy of

17  that report?  And take your time to look through

18  it.

19     A.  Yes.

20     Q.  I'm going to ask you a number of

21  questions about this report throughout the

22  deposition, but my first set of questions I want

23  to direct your attention to page 35, which is a

24  court case expert witness log from 2004 to the

1                    CERTIFICATE

2    STATE OF OHIO      :
                              SS:
3    COUNTY OF FRANKLIN :

4            I, Rhonda Lawrence, a stenographic
     court reporter and notary public in and for the
5    State of Ohio, duly commissioned and qualified,
     do hereby certify that the within-named ERIC J.
6    GARDNER, MAI, CCIM was first duly sworn to
     testify to the truth, the whole truth, and
7    nothing but the truth in the cause aforesaid;
     that the testimony then given was taken down by
8    me stenographically in the presence of said
     witness, afterwards transcribed; that the
9    foregoing is a true and correct transcript of
     the testimony; that this deposition was taken at
10   the time and place in the foregoing caption
     specified.
11
             I do further certify that I am not a
12   relative, employee or attorney of any of the
     parties hereto; that I am not a relative or
13   employee of any attorney or counsel employed by
     the parties hereto; that I am not financially
14   interested in the action; and further, I am not,
     nor is the court reporting firm with which I am
15   affiliated, under contract as defined in Civil
     Rule 28(D).
16
             In witness whereof, I have hereunto
17   set my hand at Columbus, Ohio, on this 13th day
     of February, 2024.
18

19

20

21
                  *Rhonda Lawrence*
22                Rhonda Lawrence
23                Notary Public, State of Ohio

24   My commission expires:  October 9, 2028



## Real Estate Appraisal & Market Damages Analysis

### Restricted Report Format

Former UMCH Site
Worthington, Franklin County, OH 43085
37.847 Acres



Prepared For:
Mr. Joseph R. Miller
Partner
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215

GSCREG Assignment Number: 23-2522

Prepared By: Eric J. Gardner, MAI, CCIM



| Subject Address | The subject property is commonly known as the former United Methodist Church Childrens Home (UMCH) |
|---|---|
| | Located along the West side of North High Street, Worthington, Franklin County, OH 43085 |
| Date of Report | June 15, 2023 |
| Effective Date of Value | December 2022 |
| Stabilized Date of Value | January 2026 |
| Site Visit Date | Multiple times between April 24, 2023 – June 11, 2023 |

Subject Property

| Key Factors | | | |
|---|---|---|---|
| Parcel ID | Address | Acreage | SF |
| 100-006774-00 | N. High Street | 37.350 | 1,626,966 |
| 100-002425-00 | 47 Larrimer Avenue | 0.263 | 11,456 |
| 100-002427-00 | 57 Larrimer Avenue | 0.234 | 10,193 |
| Total | | 37.847 | 1,648,615 |

| Ownership | | | Worthington Campus, LLC |
|---|---|---|---|
| Zoning | | | |
| Parcel ID | Zoning Definition | Acreage | Zoning Jurisdiction |
| 100-006774-00 | C-3, Institutions and Offices | 5.650 | City of Worthington |
| | C-2, Community Commercial | 0.700 | City of Worthington |
| | S-1, Special | 31.000 | City of Worthington |
| 100-002425-00 | R-10, Low Density Residence | 0.263 | City of Worthington |
| 100-002427-00 | R-10, Low Density Residence | 0.234 | City of Worthington |
| Total | | 37.847 | |

| Client(s) | Mr. Joseph R. Miller, Vorys, Sater, Seymour and Pease LLP |
|---|---|
| Purpose and Intended Use | The purpose of the Appraisal was to develop an opinion of the retrospective market value as of the effective dates shown throughout this report of the fee simple interest of the subject property using multiple valuation scenarios and a resulting analysis owed to land owner. A personal tour of the property was performed, and the analyses used to form an opinion of value are contained in the following appraisal report. The intended use of the appraisal is to be used by Mr. Joseph R. Miller, Vorys, Sater, Seymour and Pease LLP. This assignment has been prepared by an Ohio Certified General Appraiser and an MAI Designated Member of The Appraisal Institute in an impartial, objective, and independent manner. |
| Intended Use | For use in a Court Case |
| Intended User(s) | Mr. Joseph R. Miller, Vorys, Sater, Seymour and Pease LLP |
| Property Rights | Fee Simple |
| Type of Value | Market Value – Subject to multiple scenarios and effective dates |

**Definition of Market Value**

According to the Office of the Comptroller of the Currency under 12 CFR, Part 34, Subpart C-Appraisals, 34, 42 Definitions ([.h].), the definition of Market Value is as follows: *The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:*

    a.    *Buyer and seller are typically motivated;*

    b.    *Both parties are well informed or well advised, and acting in what they consider their best interests;*

    c.    *A reasonable time is allowed for exposure in the open market;*

    d.    *Payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and*

    e.    *The price represents normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.*

Conditions of Appraisal          This assignment is subject to the following Extraordinary Assumptions:

According to The Dictionary of Real Estate Appraisal, 6th Edition – Pages 83-84, Published by The Appraisal Institute:

An Extraordinary Assumption is defined as: An assumption, directly related to a specific assignment, as of the effective date of the assignment results, could alter the appraiser's opinions or conclusions. Comment: Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

1. In Scenario A, the Before situation, we have read and considered numerous plans and scenarios put forth by Lifestyle Communities (LC). These plans and scenarios include detailed cost and value calculations. It is our opinion that these calculations are market based and are considered to be commercially reasonable based on current market conditions as of the effective date of value. We are making the Extraordinary Assumption that LC is planning an investment within the range of **$240 to $280 Million** in the property. Based on commercially reasonable market standards for the risk and return for this type of development the expected market value within about four (4) +/- years from the start of construction would be within the range of **$340 to $360 Million**.

2. In lieu of the full damages calculated within this analysis, the damages could be significantly reduced by the City of Worthington by approving commercially reasonable zoning to allow for a Planned Unit Development (PUD) for a mixed-use project that is considered to be commercially reasonable, in demand and market based. This zoning would allow the ownership group to develop the property to current market tastes and standards that would meet the tests of financial feasibility and marketability and to serve and fill a need in the community.

Sale & Listing History

To our knowledge the subject property is not listed for sale or lease or subject to any pending offers as of the effective date of value.

Subject property last transferred as shown below:

| Acquisition | |
|---|---|
| Seller | The United Methodist Children's Home West Ohio Conference of The United Methodist Church |
| Buyer | Lifestyle Real Estate Holdings, Ltd. |
| Parcel ID | 100-006774-00 |
| Sale Date | 12/29/2020 |
| Sale Price | $5,200,000 |
| Site Size (Acres) | 37.35 |
| Sales Price/Acre | $139,224 |

It is our understanding that the subject property was exposed to the open market by the seller, for a period of several years prior to this sale. The buyer purchased this property with the intention of developing a mixed-use development on the site. Prior to the sale date, the buyer, and their representatives, conducted typical and customary due diligence that also included local community involvement and input.

Scope of Work

In preparing this assignment, we:

- Toured the subject property and the surrounding area;
- Reviewed current market trends;
- Gathered information on comparable land allocations via the county auditor sites in the region;
- Gathered information on comparable land sales;
- Toured other LC Communities in Columbus and Nashville;
- Considered the market conditions and activities with active market participants familiar with the regional real estate and capital markets;
- Formed an opinion of market value for the subject property using multiple scenarios.

The table below summarizes the information requested by the Appraiser as part of this assignment and what was provided by the client and/or owner:

| Real Estate Appraisal Information Request | | | | |
|---|---|---|---|---|
| | Data Provided | | | |
| Property Data Requested | Yes | No | N/A | Comments |
| Legal description | X | | | |
| Copies of current tax bills | X | | | County Auditor |
| Details on any subject property transfers in the past three (3) years | X | | | |
| Current listing information | | | X | |
| Environmental reports pertaining to subject | X | | | |
| Site plan | X | | | LC Original Application |
| Plat map | X | | | |
| Deed | X | | | |
| Easement agreements | X | | | |
| Copy of ground lease | | | X | |
| Building plans and specifications | X | | | The UMCH Site Worthington |
| Copies of all executed leases or detailed rent roll | | | X | |
| Three-year history of income & expenses | | | X | |
| Details of planned capital expenditures | X | | | Summary of Cost Figures |

Report Option

This report has been prepared in Restricted format which is intended to comply with the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Standards Board of the Appraisal Foundation, specifically Standards Rule 2.2(b) of the 2022-23 edition.

**Highest and Best Use (HBU) of the Land – As though Vacant and available for development:**

Scenario A:     Mixed Use development. Uses include: Apartments, townhomes, single family lots, medical office space, retail and general commercial space. Modern mixed use developments in similar markets also tend to include some green space including walking trails integrated into the overall development plan.

Scenario B:     Residential, Commercial/Medical Office and Green Space development

**Most likely user/buyer:**

Scenario A:     Developer/Investor

Scenario B:     Under this scenario there will likely be multiple buyers including the following:
- R-10, Residential: Home builder
- C-2, C-3, Commercial/Medical Office: Local developer
- S-1, Green Space: Local municipality or park board

**Exposure Time:** The Appraiser's opinion of a commercially reasonable exposure time for the subject property is 12 months or less from the effective date of value.

**Marketing Time:** The appraiser's opinion of a commercially reasonable marketing time period for the subject property is 12 months or less from the effective date of value.

**Significant Market and Property Specific Factors Influencing the Subject Property**

The top positive (+) factors influencing the subject property are:

- Site has close proximity to I-270
- Site is located along a major thoroughfare – High Street
- Site benefits from strong demographics within a well-established community
- Property is located within the Columbus, Ohio MSA – State Capital
- Site is surrounded by retail, office and residential uses
- Topography is generally level
- Strong demand for new residential construction in the area

The most negative (-) or risk factors affecting the subject property are:

- Site is irregular in shape
- Capital Markets have slowed as interest rates have increased

## Opinion of Value Before – Scenario A

### This scenario assumes a PUD zoning to allow for a mixed-use development.

Land has value as it provides potential utility as the site for a structure, recreational use, agricultural tract, right of way for transportation or some other use.

There are multiple methods to develop an opinion of value of site value. The sales comparison approach is usually the preferred method for developing an opinion of site value. When there are not enough sales of similar parcels to the application of the sales comparison, alternative methods such as market extraction, allocation, land residual analysis, and various income capitalization techniques may be used. In this case, we think that the Land Allocation Method is the best method to project the market value of the site. The land allocation method is used on a regular basis by Assessors, Insurance Companies, Accounting Firms, and Lenders to allocate the value between land and improvements when analyzing real estate.

As an example, a single-family house with a total market value of $100,000 (100%) may have the underlying site value estimated at $20,000 (20%) and the improvements valued at $80,000 (80%) by the local assessor's office and /or an insurance company or a bank for various reasons.

### Summary of the Land Allocation Method

According to The Appraisal of Real Estate, 13th Edition – Page 367, Published by The Appraisal Institute:

*"The allocation method is based on the principle of balance and the related concept of contribution. Both affirm that there is a normal or typical ratio of land value to property value for specific categories of real estate in specific locations. Meaningful support for an allocation ratio may be derived from a variety of sources:*

- *Mass appraisals prepared by assessors*
- *Observed patterns over time in an area*
- *Consultation with developers who sell improved properties and can allocate sale prices between the land and the improvements based on their costs*

*The allocation method has its greatest benefit and accuracy when estimating the value of residential subdivision lots. This is the most common application of this technique and can produce accurate results if sufficient sales data is available. In situations where there is limited sales data, the allocation method does not produce conclusive value indications, but it can be used to establish approximate land value when the number of vacant land sales is inadequate.*

*The allocation method is based on typical ratios of land value to total property value for specific categories of real estate in specific locations. Allocation is useful when transactional data on comparable sites in the immediate area is not available. The typical land value can be inferred from the price range of improved properties in the immediate area if an appropriate allocation ratio can be established in the community for a specific property type."*

In our analysis, we analyzed apartments, townhomes, single family residence and office properties within Franklin County, Ohio. All properties were in the Worthington CSD. We also analyzed Lifestyle Centers within Ohio. We gathered the current assessed land and improvement values from the county auditor and from those figures we were able to calculate the percentage (%) allocated for land of each property. The values concluded in this analysis do not include any type of TIF or special financing or other incentives. Below are the properties that were considered in deriving the land allocation percentage range:

**Apartments**

| | Apartment Land Allocation Per Franklin County Auditor | | | | |
|---|---|---|---|---|---|
| | Parcel ID | Address | Land | Improvements | Total | Land Allocation % |
| 1 | 610-289140-00 | 351 Hutchinson Avenue, Columbus, Franklin County, Ohio | $1,903,200 | $13,396,800 | $15,300,000 | 12% |
| 2 | 010-256846-00 | 6374 Busch Blvd., Columbus, Franklin County, Ohio | $2,556,000 | $11,364,000 | $13,920,000 | 18% |
| 3 | 010-046129-00 | 6175 Northgate Road, Columbus, Franklin County, Ohio | $1,668,500 | $6,971,500 | $8,640,000 | 19% |
| 4 | 610-285927-00 | 727-767 Worthington Woods Blvd, Columbus, Franklin County, Ohio | $2,080,800 | $16,807,200 | $18,888,000 | 11% |

| Apartment Land Allocation Range | |
|---|---|
| Min | 11% |
| Max | 19% |
| Average | 17% |

**Townhomes**

| | Townhomes Land Allocation Per Franklin County Auditor | | | | |
|---|---|---|---|---|---|
| | Parcel ID | Address | Land | Improvements | Total | Land Allocation % |
| 1 | 100-005482-00 | 212 St. Antoine Drive, Worthington, Franklin County, Ohio | $39,600 | $166,400 | $206,000 | 19% |
| 2 | 100-005734-00 | 251 St. Antoine Drive, Worthington, Franklin County, Ohio | $39,600 | $197,700 | $237,300 | 17% |
| 3 | 100-005412-00 | 115 St. Michelle Drive, Worthington, Franklin County, Ohio | $39,600 | $145,500 | $185,100 | 21% |
| 4 | 100-005710-00 | 359 North Street, Worthington, Franklin County, Ohio | $22,000 | $129,300 | $151,300 | 15% |
| 5 | 100-006694-00 | 6337 Mar-Min Court, Worthington, Franklin County, Ohio | $118,800 | $256,100 | $374,900 | 32% |

| Townhomes Land Allocation Range | |
|---|---|
| Min | 15% |
| Max | 32% |
| Average | 21% |

**Single Family Residence**

| | Parcel ID | Address | Land | Improvements | Total | Land Allocation % |
|---|---|---|---|---|---|---|
| | Single Family Residence Land Allocation Per Franklin County Auditor | | | | | |
| 1 | 100-004370-00 | 215 Highgate Avenue, Worthington, Franklin County, Ohio | $120,000 | $466,600 | $586,600 | 20% |
| 2 | 100-004436-00 | 6500 Evening Street, Worthington, Franklin County, Ohio | $113,500 | $244,000 | $357,500 | 32% |
| 3 | 100-003981-00 | 100 Longfellow Avenue, Worthington, Franklin County, Ohio | $106,800 | $225,400 | $332,200 | 32% |
| 4 | 100-005540-00 | 217 Greenbrier Court, Worthington, Franklin County, Ohio | $115,900 | $442,200 | $558,100 | 21% |
| 5 | 100-005544-00 | 287 Greenbrier Court, Worthington, Franklin County, Ohio | $156,000 | $367,800 | $523,800 | 30% |
| 6 | 100-005542-00 | 247 Greenbrier Court, Worthington, Franklin County, Ohio | $122,600 | $514,700 | $637,300 | 19% |

| *Single Family Residence* Land Allocation Range | |
|---|---|
| Min | 19% |
| Max | 32% |
| Average | 26% |

**Office**

| | Parcel ID | Address | Land | Improvements | Total | Land Allocation % |
|---|---|---|---|---|---|---|
| | Office Land Allocation Per Franklin County Auditor | | | | | |
| 1 | 610-209009-00 | 445 Hutchinson Avenue, Columbus, Franklin County, Ohio | $3,318,100 | $17,911,900 | $21,230,000 | 16% |
| 2 | 610-218371-00 | 771-777 Dearborn Park Lane, Columbus, Franklin County, Ohio | $1,306,600 | $4,617,500 | $5,924,100 | 22% |
| 3 | 610-192340-00 | 100 E. Campus View Blvd., Columbus, Franklin County, Ohio | $2,206,200 | $5,163,800 | $7,370,000 | 30% |
| 4 | 610-213587-00 | 7575 Huntington Park Drive, Columbus, Franklin County, Ohio | $3,135,700 | $6,373,700 | $9,509,400 | 33% |
| 5 | 610-209009-00 | 445 Hutchinson Avenue, Columbus, Franklin County, Ohio | $3,318,100 | $17,911,900 | $21,230,000 | 16% |

| Office Land Allocation Range | |
|---|---|
| Min | 16% |
| Max | 33% |
| Average | 23% |

**Lifestyle Centers**

| | Property Name | Location | Land Value | Improved Value | Total Assessment | % Allocated for Land |
|---|---|---|---|---|---|---|
| | Lifestyle Centers within Ohio Per County Auditor | | | | | |
| 1 | Easton Square | Columbus, Franklin County, Ohio | $13,875,600 | $42,715,900 | $56,591,500 | 25% |
| 2 | Easton Town Center | Columbus, Franklin County, Ohio | $6,899,800 | $22,976,600 | $29,876,400 | 23% |
| 3 | The Banks | Cincinnati, Hamilton County, Ohio | $3,223,250 | $12,556,760 | $15,780,010 | 20% |
| 4 | Deerfield Towne Center | Mason, Warren County, Ohio | $8,815,300 | $45,306,750 | $54,122,050 | 16% |
| 5 | Austin Landing | Miamisburg, Montgomery County, Ohio | $16,777,910 | $81,336,180 | $98,114,090 | 17% |

| Lifestyle Center Land Allocation Range | |
|---|---|
| Min | 16% |
| Max | 25% |
| Average | 20% |

**Conclusion**

After reviewing and considering the above land allocation percentages for the different property types, we concluded an appropriate and market supported commercially reasonable land allocation range as follow:

| Summary of Land Allocation | | |
|---|---|---|
| | **Land Allocation Ranges** | |
| **Property Type** | **Low** | **High** |
| Apartments | 11% | 19% |
| Townhomes | 15% | 32% |
| Single Family | 19% | 32% |
| **Total** | | |
| Office | 16% | 33% |
| Lifestyle Centers (Multi-Family/Retail, Office/Commercial) | 16% | 25% |
| Average of All Property Types | 15% | 28% |
| **GSCREG Conclusion** | **19%** | **24%** |

To determine the opinion of value for the land in the before scenario, we considered the projected stabilized value of the entire development and applied a land allocation percentage conclusion to arrive at the stabilized land value for the subject property. Once we determined the projected stabilized land value of the subject property, we calculated the present value of the land to arrive at the final opinion of before value for the land. Below are our calculations:

| Opinion of Value - Scenario A | | | | | | |
|---|---|---|---|---|---|---|
| **Effective Date:** | | | | | | |
| January-26 | | | | | | |
| | Projected Stabilized Value | | Land Allocation % | | Total | Rounded |
| Value Range - Low | $340,000,000 | x | 19% | = | $64,600,000 | $64,600,000 |
| Value Range - High | $360,000,000 | x | 24% | = | $86,400,000 | $86,400,000 |
| **Effective Date:** | | | | | | |
| December-22 | | | | | | |
| | Stabilized (FV) | | Present Value (PV)* | | | Present Value (Rounded) |
| Value Range - Low | $64,600,000 | | $47,482,928 | | | $47,500,000 |
| Value Range - High | $86,400,000 | | $63,506,579 | | | $63,500,000 |
| **Final Opinion of Before Value** | | | | | | **$55,500,000** |

*Rate = 8%, Number of years 4

Discount Rates according to the PWC Real Estate Investor Survey have ranged from 4.75% to 10.0% for the National Apartment Market over the past several years. Therefore, a discount rate of 8% applied in this analysis is commercially reasonable and well supported.

# National Apartment Market

While some investors are being more patient in 2023, others plan to target new markets. "We will shift our focus from some southern cities with softening fundamentals to gateway cities this year," remarks an investor.

- "It is a buyers' market so we are still looking for value-added acquisition opportunities," adds an investor.

- Investors cite primary metros like Chicago and Washington, DC as prospects, as well as cities with strong demographics like Austin, Raleigh-Durham, and Salt Lake City.

- The outlook for year-one market rent growth dips from 3.89% to 3.72% this quarter, but it still exceeds this market's five-year average of 2.36% and ten-year average of 2.59%.

## FORECAST VALUE CHANGE (NEXT 12 MONTHS):
Range: (10.0%) – 5.0%
Average: (0.9%)

### KEY 1Q23 SURVEY STATS*

**Total Vacancy Assumption:**
| | |
|---|---|
| Average | 4.7% ▼ |
| Range | 1.0% to 12.0% |

**Months of Free Rent(1):**
| | |
|---|---|
| Average | 0.9 = |
| Range | Up to 2 |
| % of participants using | 50.0% ▼ |

**Market Conditions Favor:**
| | |
|---|---|
| Buyers | 25.0% ▲ |
| Sellers | 0.0% ▼ |
| Neither | 75.0% ▼ |

*▼, ▲, = = change from prior quarter
(1) on a ten-year lease

Table 29
NATIONAL APARTMENT MARKET
First Quarter 2023

| | CURRENT | LAST QUARTER | 1 YEAR AGO | 3 YEARS AGO | 5 YEARS AGO |
|---|---|---|---|---|---|
| **DISCOUNT RATE (IRR)ᵃ** | | | | | |
| Range | 5.50% – 9.00% | 4.75% – 10.00% | 5.00% – 10.00% | 5.25% – 10.00% | 5.25% – 10.00% |
| Average | 6.71% | 6.86% | 6.62% | 7.04% | 7.23% |
| Change (Basis Points) | – 15 | | – 9 | – 33 | – 52 |
| **OVERALL CAP RATE (OAR)ᵃ** | | | | | |
| Range | 3.50% – 6.00% | 3.25% – 6.00% | 3.00% – 7.00% | 3.50% – 7.00% | 3.75% – 6.50% |
| Average | 5.01% | 4.89% | 4.40% | 5.14% | 5.33% |
| Change (Basis Points) | – 12 | | – 61 | – 13 | – 32 |
| **RESIDUAL CAP RATE** | | | | | |
| Range | 4.00% – 6.00% | 4.00% – 6.00% | 3.50% – 7.00% | 4.25% – 7.00% | 4.00% – 6.50% |
| Average | 5.38% | 5.28% | 4.81% | 5.51% | 5.66% |
| Change (Basis Points) | – 10 | | – 57 | – 13 | – 28 |
| **MARKET RENT CHANGEᵇ** | | | | | |
| Range | 0.00% – 10.00% | 0.00% – 10.00% | 0.00% – 15.00% | 0.00% – 5.00% | (2.00%) – 5.00% |
| Average | 3.72% | 3.89% | 3.84% | 2.41% | 2.42% |
| Change (Basis Points) | – 17 | | – 12 | – 131 | – 130 |
| **EXPENSE CHANGEᵇ** | | | | | |
| Range | 0.00% – 6.00% | 0.00% – 8.00% | 0.00% – 6.00% | 0.00% – 3.00% | 2.00% – 3.00% |
| Average | 3.42% | 3.42% | 3.00% | 2.60% | 2.71% |
| Change (Basis Points) | 0 | | – 42 | – 82 | – 71 |
| **MARKETING TIMEᶜ** | | | | | |
| Range | 1 – 12 | 1 – 12 | 1 – 12 | 1 – 9 | 1 – 9 |
| Average | 4.6 | 4.6 | 4.3 | 3.9 | 3.6 |
| Change (▼, ▲, =) | | ▲ | ▲ | ▲ | ▲ |

a. Rate on unleveraged, all-cash transactions b. Initial rate of change c. In months

44    PwC Real Estate Investor Survey

## Opinion of Value After – Scenario B

This scenario assumes zoning will allow the following zoning breakdown:

| Zoning | | | |
|---|---|---|---|
| Parcel ID | Zoning Definition | Acreage | Zoning Jurisdiction |
| 100-006774-00 | C-3, Institutions and Offices | 5.650 | City of Worthington |
| | C-2, Community Commercial | 0.700 | City of Worthington |
| | S-1, Special | 31.000 | City of Worthington |
| 100-002425-00 | R-10, Low Density Residence | 0.263 | City of Worthington |
| 100-002427-00 | R-10, Low Density Residence | 0.234 | City of Worthington |
| Total | | 37.847 | |

Below is a map to detail the multiple zoning types for the subject site. The subject site is outlined in yellow:



For this scenario, we have used the sales comparison approach to value the site. In our analysis, we will be considering comparable land sales for residential land, office/commercial/medical land and green space (park land). Ample land sales were available for consideration for each zoning type to review for this analysis. The sales were chosen based on a similar highest and best use within the regional market since specific zoning varies from each local market. However, due to the oppressive nature of the S-1, Special zoning classification, which covers a significant portion of the property, there is virtually no market for the property as a whole.

## Residential Land Sales

| Land Sales - Residential | | | |
|---|---|---|---|
| Land Sale | Land Sale 1 | Land Sale 2 | Land Sale 3 |
| Address | 193 Franklin Avenue | 131 W. Southington Avenue | 285 McCoy Avenue |
| City | Worthington | Worthington | Worthington |
| County | Franklin | Franklin | Franklin |
| State | Ohio | Ohio | Ohio |
| Site Area (Acres) | 0.230 | 0.180 | 0.340 |
| Site Area (SF) | 10,019 | 7,841 | 14,810 |
| Parcel ID | 100-000432 | 253-002683 | 100-001498 |
| Proposed/Intended Use | Single Family | Single Family | Single Family |
| Zoning | R-10, Low Density Residence | R-10, Low Density Residence | R-10, Low Density Residence |
| Zoning Jurisdiction | City of Worthington | City of Worthington | City of Worthington |
| Shape | Rectangular | Rectangular | Rectangular |
| Grantor | Roomann Linda A Slutz William L | Lieberman Harold G Jr | Blanchard Kate S Carpenter Craig |
| Grantee | Sharvin David Patrick Goldstein Jamie Sara | Paxton Lauren Marie Shields Cory R | Wallake Ezra |
| Property Rights | Fee Simple | Fee Simple | Fee Simple |
| Sale Condition | Arm's Length | Arm's Length | Arm's Length |
| Financing | Conventional | Conventional | Conventional |
| Sale Date | July-23 | May-22 | October-20 |
| Sale Price | $190,000 | $190,000 | $225,000 |
| Sale Price/Acre | $826,087 | $1,055,556 | $661,765 |

| Land Sales Residential | |
|---|---|
| | $/Acre |
| Min | $661,765 |
| Max | $1,055,556 |

## Commercial/Medical Office Land Sales

| Land Sales - Commercial/Medical Office | | | | |
|---|---|---|---|---|
| **Land Sale** | **Land Sale 1** | **Land Sale 2** | **Land Sale 3** | **Land Sale 4** |
| Address | Wilson Bridge, W of High | 5220 Cornerstone North Blvd | 5285 Kings Mills Road | 7249 Liberty Way |
| City | Worthington | Centerville | Mason | West Chester |
| County | Franklin | Greene | Warren | Butler |
| State | Ohio | Ohio | Ohio | Ohio |
| Site Area (Acres) | 3.325 | 6.300 | 1.189 | 1.643 |
| Site Area (SF) | 144,837 | 274,428 | 51,793 | 71,569 |
| Parcel ID | 100-006791-00 | L490001000010003400 | 16-24-290-004 | M5610020000005 |
| Proposed/Intended Use | Office/Retail | Cooper's Hawk Winery & | Commercial/retail | Medical Office |
| Zoning | C4 | B-PD/Overlay CC | B-3 | O-1 |
| Zoning Jurisdiction | City of Worthington | City of Centerville | City of Mason | West Chester Township, Ohio |
| Shape | Irregular | Irregular | Rectangular | Rectangular |
| Grantor | He Hari, Inc. | Coopers Hawk Centerville , LLC | Kings Mills Outlot, LLC | Kimberly K. Daugherty Trustee for Shirley Farmer Revocable Trust |
| Grantee | He Hari Development & Sagar Patel c/o Alliance Hospitality | National Retail Properties, Inc. | Guggenheim Development Services, | RBA, Holdings, Ltd. |
| Property Rights | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Sale Condition | Arm's Length | Arm's Length | Arm's Length | Arm's Length |
| Financing | Cash | Cash | Cash | Conventional |
| Sale Date | December-19 | February-19 | June-21 | April-19 |
| Sale Price | $650,000 | $2,513,600 | $500,000 | 625,000 |
| Sale Price/Acre | $195,489 | $398,984 | $420,521 | $380,402 |

| Land Sales | |
|---|---|
| **Commercial/Medical Office** | |
| | $/Acre |
| Min | $195,489 |
| Max | $420,521 |

## Green Space Land Sales

| Land Sale | Land Sale 1 | Land Sale 2 | Land Sale 3 | Land Sale 4 |
|---|---|---|---|---|
| Address | 7389 Braun Road | 5277 East Broad Street | Groveport Road, ES Rager Road | 1570 Rohr Road |
| City | Madison Township | Columbus | Madison Township | Hamilton Township |
| County | Franklin | Franklin | Franklin | Franklin |
| State | Ohio | Ohio | Ohio | Ohio |
| Site Area (Acres) | 282.784 | 36.310 | 73.751 | 55.980 |
| Site Area (SF) | 12,318,071 | 1,581,664 | 3,212,594 | 2,438,489 |
| Parcel ID | 180-000205-00; 180-000261-00; 180-000929-00 | 010-109420-00 | 180-005403-00 | 150-001515-00 |
| Proposed/Intended Use | Park Land | Park Land | Park Land | Park Land |
| Zoning | R, Rural | R1 Residential; H-35 Height District | R, Rural | R, Rural |
| Zoning Jurisdiction | Franklin County, Ohio | City of Columbus | Franklin County, Ohio | Franklin County, Ohio |
| Shape | Irregular | Irregular | Irregular | Irregular |
| Grantor | Donna & John Miller Trust | Catholic Diocese of Columbus/Robert Brennan Bishop | James & Dawn Stevenson | YMCA of Central Ohio |
| Grantee | Board of Park | City of Columbus | Board of Park | Board of Park |
| Property Rights | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Sale Condition | Arm's Length | Arm's Length | Arm's Length | Arm's Length |
| Financing | Cash | Cash | Cash | Cash |
| Sale Date | November-21 | August-21 | September-19 | May-20 |
| Sale Price | $2,900,000 | $250,000 | $26,257 | 1,500,000 |
| Sale Price/Acre | $10,255 | $6,885 | $7,136 | $26,795 |

| Land Sales | |
|---|---|
| Green Space | |
| Min | $6,885 |
| Max | $26,795 |

**Conclusion**

| Opinion of Value - Scenario B | | | | | | |
|---|---|---|---|---|---|---|
| Effective Date: | | | | | | |
| December-22 | | | | | | |
| | | | | | | |
| Land Value - Residential | Land Area (Acre) | | $/Acre | | Total | Rounded |
| Value Range - Low | 0.497 | x | $700,000 | = | $347,900 | $348,000 |
| Value Range - High | 0.497 | x | $800,000 | = | $397,600 | $398,000 |
| | | | | | | |
| **Opinion - Residential Land** | | | | | | **$373,000** |
| Land Value - Commercial/Medical Office | Land Area (Acre) | | $/Acre | | Total | Rounded |
| Value Range - Low | 6.350 | x | $325,000 | = | $2,063,750 | $2,060,000 |
| Value Range - High | 6.350 | x | $425,000 | = | $2,698,750 | $2,700,000 |
| | | | | | | |
| **Opinion - Commercial/Medical Office** | | | | | | **$2,380,000** |
| Land Value - Green Space | Land Area (Acre) | | $/Acre | | Total | Rounded |
| Value Range - Low | 31.000 | x | $12,500 | = | $387,500 | $390,000 |
| Value Range - High | 31.000 | x | $25,000 | = | $775,000 | $780,000 |
| | | | | | | |
| **Opinion - Green Space Land** | | | | | | **$585,000** |
| | | | | | | |
| **Final Opinion - Land Value for Total Site** | | | | | | **$3,338,000** |

**Final Opinion of Value**

Our conclusion of value is based on the different highest and best use scenarios for the subject site. Below are our conclusions:

| Conclusion of Values | | |
|---|---|---|
| | HBU | Whole $ |
| Opinion of Value - Scenario A | Mixed Use | $55,500,000 |
| Opinion of Value - Scenario B | Residential/Office/Commercial/Green Space | $3,338,000 |
| **Difference / Damages** | | **$52,162,000** |

**Total Temporary Regulatory Take**

As a result of the total temporary regulatory taking, it is my opinion that the owner was forced to incur carrying cost as a result of the duration of the take. My conclusions of the amount due the owner consist of the items as detailed below:

| Reimbursement of Carrying Cost | | | | |
|---|---|---|---|---|
| December 13, 2021 - June 15, 2023 (18 Months) | | | | |
| Yearly Property Taxes | 2021 | 2022 | 2023 | |
| All Parcels - Property Taxes | $86,066 | $290,308 | $120,353 | |
| All Parcels - Insurance | $1,813 | $1,813 | $1,813 | |
| Total | $87,879 | $292,121 | $122,166 | |
| | | | | Total |
| # of Months per Year | 0.5 | 12 | 5.5 | 18.0 |
| Total Reimbursement of Carrying Cost Per Year | $3,662 | $292,121 | $55,993 | $351,776 |

Source: Ownership Group

| Total Temporary Regulatory Take & Property Taxes | |
|---|---|
| Value Conclusion - Scenario A | $55,500,000 |
| Annual Ground Rent | 10% |
| Annual - Whole Dollars | $5,550,000 |
| Monthly - Ground Rent | $462,500 |
| Number of Months | 18 |
| Total Temporary Ground Rent | $8,325,000 |
| Plus: Total Estimated Carry Costs* | $351,776 |
| **Total Amount Due to Owner - Temporary & Taxes** | $8,676,776 |

*Source: Ownership Group

**Photographs of Subject Property – Taken by Eric J. Gardner April 24, 2023**



View from near the center of site



View from near the center of site



View from near the center of site



View from near the center of site



N. High Street driveway entrance facing West



N. High Street driveway entrance view looking North





N. High Street driveway entrance view looking South    View of subject site from N. High Street driveway





View near driveway entrance from N. High Street    View from N. High Street Driveway





Paved area near middle of site    Paved area and driveway near middle of site



Northern area of Subject Site



Northern Area of Subject Site



Subject Site



Subject Site



Subject Site – water & utilities present



Subject Site – area of recently razed buildings



Subject Site



Subject Site – area of recently razed buildings



Subject Site – area of sidewalks for previous use



Subject Site – area of sidewalks for previous use



Subject Site – fire hydrant on site



Subject site – driveway for previous use




Subject site – driveway for previous use          Subject site – former building pad area

LC New Albany property to demonstrate similar improvements recently completed by developer. The photographs below were taken by Eric J. Gardner, June 11, 2023.






































































 **RiskMeter**

## 47 LARRIMER AVE WORTHINGTON, OH 43085-2454

**LOCATION ACCURACY:**

### Flood Zone Determination: OUT

| COMMUNITY | 390181 | PANEL | 0157K |
|---|---|---|---|
| PANEL DATE | June 17, 2008 | MAP NUMBER | 39049C0157K |



- X500 or B Zone
- A Zone
- V Zone
- D Zone
- Floodway
- CBRA

© 2023 CoreLogic, Inc. All rights reserved. CORELOGIC, RISKMETER, PXPOINT and the CoreLogic logo are trademarks of CoreLogic, Inc. and/or its subsidiaries. All other trademarks are the property of their respective holders.

**AN APPRAISER LICENSE/CERTIFICATE**
has been issued under ORC Chapter 4763 to:

NAME:
**Eric J Gardner**

LIC/CERT NUMBER:
**000419444**

LIC LEVEL:
**Certified General Real Estate Appraiser**

**Ohio** | Department of Commerce

Division of Real Estate & Professional Licensing

CURRENT ISSUE DATE:
**03/08/2023**

EXPIRATION DATE:
**04/01/2024**

USPAP DUE DATE:
**04/01/2024**



### Statement of Compensation

The Gardner Street Commercial Real Estate Group LLC is being compensated for all investigative and analysis work on this matter at the following hourly billable rates:

| Professional Staff Members | $/Hour |
|---|---|
| Eric J. Gardner, MAI, CCIM | $395.00 |
| Certified General Appraiser | $295.00 |
| Senior Analyst | $245.00 |
| Junior Analyst | $205.00 |
| Property and Market Research | $145.00 |

All deposition testimony will be paid on a fixed fee basis as outlined below:

| | Duration | Fixed Fee |
|---|---|---|
| ¼ Day | Up to 4 Hours | $3,000 |
| ½ Day | 4 – 6 Hours | $4,000 |
| Full Day | 6 – 8 Hours | $5,000 |

All courtroom testimony will be billed at $450.00 per hour. The Gardner Street Commercial Real Estate Group LLC also invoices any out-of-pocket expenses, including but not limited to printing and reproduction costs, postage and delivery fees, permit fees, photography and renderings expenses, and travel expenses.

9902 Carver Road, Suite 101 | Cincinnati, OH 45242 | 513.880.9900

**Eric J. Gardner, MAI, CCIM    Court Case Expert Witness Log 2004 - Current**

In addition to the below cases, I have provided expert witness testimony for numerous real estate tax appeal cases at both the Board of Revision & Ohio Board of Tax Appeals. I have appeared in Hamilton, Butler, Warren, Clermont, Montgomery, Summit, Franklin, Allen & Stark counties in Ohio.

| Line | Date | Name of Case / Property | Presented Testimony To | Nature of the Case | Client |
|---|---|---|---|---|---|
| 1 | Nov-04 | Stonelick Twp. vs. Grand Communities | Clermont County | Land Use/Density | Stonelick Twp. Bd. Of Trustees/Bob Surdyk, Esq. |
| 2 | Nov-04 | TDELL, LLC - Huber Heights | Montgomery County | Condemnation Case | Statman, Harris Siegel & Eyrich |
| 3 | Mar-05 | Horn/Taylor Property | ODOT - Deposition Only | Condemnation Case | Horn/Taylor/RHG |
| 4 | Apr-05 | Ravenswood Apartments | Bankruptcy Court - Hamilton County | Market Value Analysis | Dinsmore & Shohl |
| 5 | Jun-05 | Leach vs. ODOT | ODOT - Deposition Only | Condemnation Case | Mark Leach/RHG |
| 6 | Jan-05 | Buffalo Wild Wings - West Chester | Hamilton County - Family Law Services | Divorce Case | Dominic Mastruserio, Esq. |
| 7 | May-06 | Gunlock vs. ODOT (Ross County) | ODOT - Deposition Only | Condemnation Case | Gunlock Family / Stan Bender, Esq. |
| 8 | May-06 | Spirit of America Building - Bernard v. Bernard | Clermont County - Family Law Services | Divorce Case | Mike Bernard |
| 9 | Sep-06 | Confidential - Pending | Colerain Twp. Bd of Trustees | Zoning Case | JT |
| 10 | Dec-06 | EnviroTest Sites | Deposition Only | Market Value Analysis | McMahon DeGulis, LLP |
| 11 | Sep-08 | Superior Marine vs. ODOT - Lawrence County, O | Lawrence County Common Pleas Court | Condemnation Case | Superior Marine / Tepe |
| 12 | Feb-09 | ODOT vs. Dinus | Warren County Common Pleas Court | Condemnation Case | Richard H.Glazer, Esq. |
| 13 | Apr-09 | Stewart / Bergmann Farms | Boone County, KY - Common Pleas Court | Partition Case | DBL Law Firm - Todd McMurtry, Esq. |
| 14 | Apr-09 | Washington Twp. Vs. White Oak | Deposition Only | Highest and Best Use | Washington Twp. / Bob Surdyk, Esq. |
| 15 | Jun-09 | Mowrey vs. REX | Federal Commission | Condemnation Case | Philip Sever, Esq. |
| 16 | Jun-09 | Bates vs. REX | Federal Commission | Condemnation Case | Philip Sever, Esq. |
| 17 | Jul-09 | UPS Property - Dayton Airport | Deposition Only | Market Value Analysis | Frost Brown Todd / UPS |
| 18 | Sep-10 | McKinley vs. Rex | Federal Commission | Condemnation Case | Richard H.Glazer, Esq. |
| 19 | Oct-10 | Faith Lutheran Site | Hamilton County Court of Common Pleas | Condemnation Case | Richard H.Glazer, Esq. |
| 20 | Oct-10 | Hannaford Condo Building | Kenton County Court of Common Pleas | Market Value Analysis | DBL |
| 21 | Feb-11 | Gibson Greeting Building | Hamilton County Court of Common Pleas | Market Value Analysis | Strauss & Troy |
| 22 | Mar-11 | Queensgate Terminals | Hamilton County Court of Common Pleas | Market Value Analysis | Taft Law |
| 23 | Oct-12 | Gator Milford vs. Clermont County TID | Clermont County Court of Common Pleas | Condemnation Case | Santen & Hughes |
| 24 | Nov-12 | Vine Street Hill Commercial Site | ODOT - Binding Arbitration | Condemnation Case | Jay Bennett, Esq. |
| 25 | Jun-13 | Charlie's Tires | Lawrence County Common Pleas Court | Condemnation Case | Richard B. Meyers, Esq. |
| 26 | Aug-13 | Fred & Donna DeBra Site | Hamilton County Court of Common Pleas | Condemnation Case | C. Francis Barrett, Esq. |
| 27 | Aug-14 | American Diversified Dev. Inc. vs. Sanitation District No. 1 of Campbell, Kenton, Boone | Deposition Only | Condemnation Case | Wolnitzek, Rowekamp & DeMarcus |
| 28 | Jan-15 | Lima Chester LLC vs. Third Lima Corp., et al. | Deposition Only | Owner/Tenant Dispute | Keating Muething & Klekamp |
| 29 | May-15 | Champion Signs vs. Dee Sign, et al. | Federal Court - San Diego, CA | Owner/Tenant Dispute | Stoel Rives LLP |
| 30 | Aug-15 | Brown Properties vs. KDOT | KDOT - Deposition Only | Condemnation Case | Richard H.Glazer, Esq. |
| 31 | May-16 | Rogers House | ODOT - Deposition Only | Appropriation Case | Marvin A. Robon, Esq. |
| 32 | Jun-16 | McDonald's, Carroll, OH | ODOT - Deposition Only | Appropriation Case | Mansour Gavin, LPA |
| 33 | Jan-17 | Speedway, Carroll, OH | ODOT - Deposition Only | Appropriation Case | Mansour Gavin, LPA |
| 34 | Jun-17 | 3 Sweet Girls Cakery - LLP Properties vs. Village of Silverton | Hamilton County Court of Common Pleas | Appropriation Case | Barrett & Weber |
| 35 | Sep-17 | St Joseph's Cemetery Association | ODOT - Deposition Only | Appropriation Case | Barkan & Robon |
| 36 | Sep-17 | Green Acres Foundation v. City of Cincinnati | City of Cincinnati - Deposition | Appropriation Case | Barrett & Weber |
| 37 | Sep-17 | McKenna vs. McKenna | Hamilton County - Family Law Services | Divorce Case | Greg Adams |
| 38 | Nov-17 | Green Acres Foundation v. City of Cincinnati | Hamilton County Court of Common Pleas | Appropriation Case | Barrett & Weber |
| 39 | Nov-17 | Village of Silverton v. LLK Properties | Deposition Only | Appropriation Case | Barrett & Weber |
| 40 | Jan-18 | Various Owners (11) vs. Rover Pipeline | Deposition Only | Appropriation Case | Barkan & Robon |
| 41 | Jan-18 | 3 Sweet Girls Cakery - LLP Properties vs. Village of Silverton | Hamilton County Court of Common Pleas | Appropriation Case | Barrett & Weber |
| 42 | Aug-18 | Rover Pipeline vs. Dush | Federal Court - Northern District of Ohio | Appropriation Case | Roetzel & Andress |
| 43 | Nov-18 | Rover Pipeline vs. Northern Ohio Properties | Deposition Only | Appropriation Case | Barkan & Robon |
| 44 | Oct-19 | Brackett Village vs. Hamilton County Auditor | Hamilton County Court of Common Pleas | Tax Appeal | C. Francis Barrett, Esq. |
| 45 | Oct-19 | 550 E. Court St. vs. Hamilton County Auditor | Hamilton County Court of Common Pleas | Tax Appeal | C. Francis Barrett, Esq. |
| 46 | Jan-21 | *Zettler vs. ODOT (Pending as of May 2023)* | Hamilton County Court of Common Pleas - Deposition Only | Appropriation Case | C. Francis Barrett, Esq. |
| 47 | Jun-21 | Speedway v. City of Blue Ash | Hamilton County Court of Common Pleas - Deposition Only | Appropriation Case | Roetzel & Andress - Steve Jones |
| 48 | Nov-21 | Tim Hershner Properties vs. MSD | Hamilton County Court of Common Pleas | Appropriation Case | C. Francis Barrett, Esq. |
| 49 | May-22 | Stapleton vs. KYTD | Boone County, KY - Common Pleas Court | Appropriation Case | Ryan Turner, Esq. - Dallas & Turner |
| 50 | Dec-22 | Oakes vs. Oakes | Montgomery County - Family Law | Divorce Case | Isaac Wiles - Joanne Beasy & Matthew Rinear |

## Certification

*I certify that, to the best of my knowledge and belief....*

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.

- I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three (3) year period immediately preceding acceptance of this assignment.

- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*, the *Code of Professional Ethics*, and the *Standards of Professional Practice of the Appraisal Institute*.

- Eric J. Gardner, MAI, CCIM has personally viewed the exterior of the property that is the subject of this report.

- No one provided significant real property appraisal assistance to the person(s) signing this certification.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representative.

- As of the date of this report, Eric J. Gardner, MAI, CCIM has completed the requirements of the continuing education program of the Appraisal Institute.

Eric J. Gardner, MAI, CCIM
Gardner Street Commercial Real Estate Group, LLC
State of Ohio Certified General Appraiser Certificate #419444

## Assumptions and Limiting Conditions

This appraisal has been made with the following general assumptions:

1. The report is considered valid only for whom it was prepared and for the stated purpose and function.

2. That the term market value, as herein used, is defined proceeding in this appraisal report.

3. That the date of value to which the opinions expressed in this report apply is set forth in the letter of transmittal. The appraiser assumes no responsibility for economic or physical factors occurring at some later date that may affect the opinions herein stated.

4. That no opinion is intended to be expressed for legal matters or that would require specialized investigator knowledge beyond that ordinarily employed by real estate appraisers, although such matters may be discussed in the report.

5. That no opinion as to title is rendered. Data on ownership and the legal description were obtained from sources generally considered reliable. Title is assumed to be marketable and free and clear of all liens and encumbrances, easements, and restrictions except those specifically discussed in the report. The property is appraised assuming it to be under responsible ownership and competent management and available for its highest and best use.

6. That no engineering survey has been made by the appraiser. Except as specifically stated, data relative to size and area were taken from sources considered reliable, and no encroachment of real property improvements is assumed to exist.

7. That maps, plats, and exhibits included herein are for illustration only, as an aid in visualizing matters discussed within the report. They should not be considered as surveys or relied upon for any other purpose.

8. That no opinion is expressed as to the value of subsurface oil, gas, or mineral rights, and that the property is not subject to surface entry for the exploration or removal of such materials except as is expressly stated.

9. That the projections included in this report are utilized to assist in the valuation process and are based on current market conditions, anticipated short term supply and demand factors, and a continued stable economy. Therefore, the projections are subject to changes in future conditions that cannot be accurately predicted by the appraiser and could affect the future income or value projections.

10. That testimony or attendance in court or at any other hearing is not required by reason of rendering this appraisal unless such arrangements are made a reasonable time in advance.

11. Information contained in this report is assumed to be correct but is not guaranteed.

12. Possession of this report or any copy thereof does not carry with it the right of publication. Disclosure of the contents of this report is governed by the Bylaws and Regulation of the Appraisal Institute. Neither all nor any part of the contents of this Report (especially any conclusions as to value, the identity of the Appraiser or the firm with which the appraiser is connected, or any reference to the Appraisal Institute or to the MAI designation) shall be disseminated to the public through advertising media, public relations media, social media, news media, sales media or any other public means of communication, without the prior written consent and approval of GSCREG, LLC.

13. That, because no title report was made available to the appraiser, he assumed no responsibility for such items of record not disclosed by his normal investigation.

14. That no detailed soil studies covering the subject property were available to the appraiser. Therefore, premises as to soil qualities employed in this report are not conclusive but have been considered consistent with information available to the appraiser.

15. That the appraiser has personally inspected the subject property and finds no obvious evidence of structural deficiencies except as stated in this report; however, no responsibility for hidden defects or conformity to specific governmental requirements, such as fire, building and safety, earthquake, or occupancy codes, can be assumed without provision of specific professional or governmental inspections.

16. That no consideration has been given in this appraisal to personal property located on the premises, or to the cost of moving or relocating such personal property; only the real property has been considered.

17. That the appraiser is not qualified to detect the existence of potentially hazardous material which may or may not be present on or near the property, such as the presence of formaldehyde foam insulation, existence of toxic waste, or the existence of asbestos insulation. The existence of such substances may have an effect on the value of the property. No consideration has been given in our analysis to any potential diminution in value should such hazardous materials be found. We urge the client to retain an expert in the field before making a business decision regarding the property.

18. It is assumed any requirements under the Americans With Disabilities Act (ADA) for the subject property have been met. In the event any requirements are currently pending that would require modification to the existing structure, the appraiser reserves the right to amend this report and make any value adjustment considered necessary.

19. It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless nonconformity has been stated, defined, and considered in the appraisal report. Zoning laws are assumed to be stable. No responsibility is assumed for building code violations.

20. No responsibility is assumed for any architectural, structural, mechanical or engineering matters. All engineering is assumed to be correct. It is assumed that there are no hidden conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

21. The appraisal report may contain a valuation relating to the geographical portion of a larger parcel and the value reported for such portion plus the value of all other geographic portions may or may not equal the value of the entire parcel or tract when considered in its entirety.

22. Any value opinions provided in this report apply to the subject property as a whole, and any proration or division of the total into fractional interests will invalidate the value opinion, unless such proration or division of interests has been set forth in the report.

23. The distribution, if any, of the total valuation in this report between land and improvements applies only under the stated program of utilization. The separate allocations for land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

24. It is assumed that the site could be developed and/or utilized without severe limitations or restrictions due to any "wetlands" regulations, unless so noted.

25. Unless otherwise stated in the body of the report, the appraised value contained herein does not reflect any type of financing, if any, through PACE (Property Assessed Clean Energy) programs.

26. Our financial models, analysis and tables within our report are done using Microsoft Excel. Any columns that do not add or multiple precisely are due to slight rounding within Microsoft Excel.

27. The opinions in this report are stated to a reasonable degree of certainty. We reserve the right to conduct additional analysis upon review and consideration of additional documents and information and to supplement / revise or update this report as appropriate.

**EXTRAORDINARY ASSUMPTIONS:** An assumption, directly related to a specific assignment, as of the effective date of the assignment results, which, if found to be false, could alter the appraiser's opinions or conclusions. Comment: Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis. This assignment **has been** premised on the following extraordinary assumptions.

1. In Scenario A, the Before situation, we have read and considered numerous plans and scenarios put forth by Lifestyle Communities (LC). These plans and scenarios include detailed cost and value calculations. It is our opinion that these calculations are market based and are considered to be commercially reasonable based on current market conditions as of the effective date of value. We are making the Extraordinary Assumption that LC is planning an investment within the range of $240 to $280 Million in the property. Based on commercially reasonable market standards for the risk and return for this type of development the expected market value within about four (4) +/- years from the start of construction would be within the range of $340 to $360 Million.

2. In lieu of the full damages calculated within this analysis, the damages could be significantly reduced by the City of Worthington by approving commercially reasonable zoning to allow for a Planned Unit Development (PUD) for a mixed-use project that is considered to be commercially reasonable, in demand and market based. This zoning would allow the ownership group to develop the property to current market tastes and standards that would meet the tests of financial feasibility and marketability and to serve and fill a need in the community.

**HYPOTHETICAL CONDTIONS:** A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in analysis. This assignment **has not been** premised on any hypothetical conditions.

## Eric J. Gardner, MAI, CCIM

Commercial Real Estate Appraiser

| Positions | | |
|---|---|---|
| | President, Partner | Real Estate Salesperson |
| | Gardner Street Commercial Real Estate Group, LLC | Edge Real Estate Group |
| | 9902 Carver Road, Suite 101 | 128 E. 2nd Street, Suite B |
| | Cincinnati, Ohio 45242 | Covington, KY 41011 |
| | Office Phone: (513) 880-9900 | Ohio File Number: SAL 2002001921 |
| | Mobile Phone: (513) 543-9992 | Broker: Michael Halonen |
| | E-Mail: egardner@gscreg.com | |

Experience     January 2020 to Present, President, Partner, Gardner Street Commercial Real Estate Group, LLC

2010 to 2019, Senior Vice President, Pillar Valuation Group, Inc.

2006 – 2010, Principal, Cassidy Turley/Colliers Turley Martin Tucker

1998 – 2006, Principal, The Gem Real Estate Group, Inc.

1992 – 1998, Appraiser, Property Advisors Corporation

**Property Types**

| | |
|---|---|
| Retail | Multi-Family |
| Office/Medical | Land |
| Industrial | Special Use Properties |

**Real Estate Expert Services Include**

| | |
|---|---|
| Market Value | Absorption Studies |
| Financial Feasibility | Market Analysis |
| Rental Analysis | Income and Expense Analysis |
| Discounted Cash Flow Analysis | Before and After Market Values |

**Expert Witness Testimony**

As a qualified expert I have testified in Federal and State courts, as well as numerous Board of Revision and Ohio Board of Tax Appeal cases.

| | |
|---|---|
| Property Tax Appeal Cases | Damages Cases |
| Eminent Domain Cases | Divorce Cases |

Geographic Coverage     As a Commercial Real Estate Expert I have performed assignments throughout the Midwestern United States. I have also coordinated and reviewed assignments in South America and Europe.

Types of Clients     Fortune 500 Companies, Lenders (banks, life insurance companies, pension funds, conduits), Private Corporations, REITs, Developers, Investors, Legal and Financial Counsel, Governments, Economic Development Agencies, and Investors.

| | |
|---|---|
| Community Leadership | NAIOP – Cincinnati/N. KY Chapter, President (2002) and Board Member (1995-2004) |
| | Appraisal Institute – Ohio Chapter, 2009 President and Board Member (2004-2010) |
| | Boy Scouts of America, Dan Beard Council, Board Member & Warren County District Chair (2021 – Current) |
| | St. Xavier High School, Career Connections, Mentor (2017 – Current) |
| Memberships | Ohio Chapter of the Appraisal Institute |
| | Ohio CCIM Chapter |
| | ICSC (International Council of Shopping Centers) |
| | University of Cincinnati, Real Estate Center, BEARE Board Member |
| | Cincinnati Area Board of Realtors, Member |
| | National Eagle Scout Association, Boy Scouts of America, Class of 1987 |
| Speaking & Teaching Engagements | Lectured for numerous professional, business and community organizations on Commercial Real Estate, financing, eminent domain, tax appeals and related matters. |
| | University of Cincinnati, College of Business – Adjunct Professor, Department of Finance/Real Estate – Real Estate Principles; Real Estate Appraisal; Real Estate Development Courses. |
| Education | M.B.A., Major in Finance, University of Dayton – 1999 |
| | B.B.A., Major in Marketing and Management, University of Cincinnati - 1993 |
| Designations/ Certifications | MAI-Member, Appraisal Institute #11560 – January 2000 |
| | CCIM – Certified Commercial Investment Member #10785 – May 2003 |
| | State of Ohio – Certified General Appraiser, #419444 |
| | State of Kentucky – Certified General Appraiser, #001670 |
| | State of Indiana – Certified General Appraiser, #CG40300441 |
| | State of Ohio – Real Estate Salesperson, #2002001921 |
| | State of Michigan – Certified General Appraiser, #1201007609 |
| Continuing Education | Ohio, Kentucky, Indiana and Michigan require at least 14 hours per year of continuing education. The Appraisal Institute requires at least 20 hours per year of continuing education, with which I am current. |
| USPAP | I am current with all USPAP requirements and continuing education. |

| APPRAISER DISCLOSURE STATEMENT |
| In compliance with Ohio Revised Code Section 4763.12 (C) |

1. Name of Appraiser: Eric J. Gardner, MAI, CCIM, MRICS

2. Class of Certification/Licensure: X Certified General

_____ Licensed Residential

_____ Temporary _____ General _____ Licensed

Certification/Licensure Number 419444

3. Scope: This report X is within the scope of my Certification of License

_____ is not within the scope of my Certification or License

4. Service Provided By: X Disinterested & Unbiased Third Party

_____ Interested & Biased Third Party

_____ Interested Third Party on Contingent Fee Basis

5. Signature of person preparing and reporting the appraisal

*(signature)*

This form must be included in conjunction with all appraisal assignments or specialized services performed by a state-certified or state-licensed real estate appraiser.

State of Ohio
Department of Commerce
Division of Real Estate
Appraiser Section
Cleveland (216) 787-3100