**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LIFESTYLE COMMUNITIES, LTD**., *et al.*, | ) | Civil Action 2:22-CV-1775 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Judge Sarah D. Morrison |
| | ) | |
| **CITY OF WORTHINGTON, OHIO**, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge Elizabeth P. Deavers |
| | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**(ECF No. 65)**

## I.    INTRODUCTION

This Court correctly held that Lifestyle's Complaint stated sufficient facts to withstand a motion to dismiss Lifestyle's regulatory taking, retaliation, and declaratory judgment claims. (ECF Nos. 37 & 50.)  The Court determined that Lifestyle's claims involve factual inquiries and that Lifestyle had pleaded facts that, if true, could warrant judgment in Lifestyle's favor.  (ECF No. 37 PageID # 529-31; ECF No. 50 PageID # 639-40.)  Discovery has shown those facts are true.  The City prescribed how the Property should be rezoned.  Yet, once Lifestyle purchased the Property, the City locked in the Property's existing zoning, refused to allow Lifestyle to put the Property to any productive use, and adopted a resolution that requires any future development of the Property to include a public park.  In its opposition ("Opposition"), the City ignores the sworn testimony of its own witnesses acknowledging these material and undisputed facts.  The City also conflates the standards required to succeed on the regulatory takings and retaliation claims and wholly ignores the declaratory judgment claim.  In short, the City fails to provide material facts that could undermine this Court's prior rulings.  Lifestyle's Motion for Summary Judgment ("Motion") should therefore be granted.

## II. STANDARD OF REVIEW

In its Opposition, the City suggests that the Court should grant summary judgment in favor of one party or the other simply because both parties filed motions for summary judgment. (ECF No. 79 PageID # 4461.) As the Sixth Circuit recently held, when there are cross motions for summary judgment, courts are required to "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Whitman v. CitiMortgage, Inc.*, No. 23-5802, 2024 U.S. App. LEXIS 6921, at *4 (6th Cir. Mar. 21, 2024) (citation and quotation omitted) (filing "cross motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate.") Should the Court find after its review of the motions that disputes of material fact exist, this case should proceed to trial.

## III. LAW AND ARGUMENT

### A. Lifestyle Is Entitled to Summary Judgment on Its Regulatory Takings Claim.

The undisputed facts demonstrate that the City's actions have caused a substantial economic impact and interfered with Lifestyle's investment-backed expectations in a manner that is consistent with a taking.[1] Lifestyle should therefore be granted judgment on its takings claim.

#### 1. The City's Actions Caused a Substantial Economic Impact.

The City makes four erroneous arguments to support its proposition that the first *Penn Central* factor is not satisfied. First, the City claims that Lifestyle's "inability to use the Property at its most profitable use does not support a claim for regulatory taking." (ECF No. 79 PageID # 4463.) This mischaracterizes Lifestyle's argument. (ECF No. 65 PageID # 1658-60.) Expert

---

[1] The City states that the Court's dismissal of Lifestyle's due process and equal protection claims is dispositive of Lifestyle's takings claim. (ECF No. 79 PageID # 4461.) The City is incorrect. The Sixth Circuit recognizes that courts regularly consider takings claims where a due process claim has been dismissed. *See Andrews v. City of Mentor*, 11 F.4th 462, 469 (6th Cir. 2021).

witness Eric Gardner opined that the value of the Property under the current zoning is $3,338,000. (Gardner Dep. Ex. 1, p. 17.) Had the City followed the Focus Area Plan and allowed for development consistent therewith, the Property, undeveloped, would be worth $55,500,000 – a diminution of $52,162,000 or nearly 94%. (*Id.*) Lifestyle has not complained that the City's actions have caused the land to be deprived of its most profitable use. Had it done so, Lifestyle would have relied on Mr. Gardner's valuation of the Property after development, which would be "within the range of $340 to $360 Million." (*Id.* at 4.)

Second, the City downplays the impact of its actions by framing it as a "mere diminution in value." (ECF No. 79 PageID # 4463-64.) To the contrary, Lifestyle has established a substantial economic impact that is demonstrated – in part – by the 94% diminution in value to its Property. (ECF No. 65 PageID # 1658-60.) Courts have found takings with a smaller diminution of value than here. *See, e.g.*, *Yancy v. United States*, 915 F.2d 1534, 1541 (Fed. Cir. 1990) (77% diminution); *Florida Rock Indus. v. United States*, 45 Fed. Cl. 21, 43 (1999) (73.1% diminution).[2] The City also incorrectly states that Lifestyle "complain[s] *exclusively* about the S-1 zoning district, which occupies 27.5 of the 37.6 acres" of the Property. (ECF No. 79 PageID # 4465.) The City ignores Resolution 04-2022, which states that the entire Property must be developed as a cohesive whole with a "large contiguous greenspace." (Robinson Dep. Ex. 7.) The City's actions therefore span beyond the present S-1 zoning and tie up the entire Property. Even still, "[t]he

---

[2] In its motion, Lifestyle stated that "[c]ourts have found regulatory takings where the diminution in value is over 75%" and cited in error *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) and *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) for that proposition. Lifestyle intended to rely upon the *Euclid* and *Hadacheck* cases to establish that there is no "bright line" dispositive rule regarding the percentage of diminution required to find a taking. *See, e.g.*, *Apollo Fuels v. United States*, 54 Fed. Cl. 717, 723 n.11 (2002) (stating the Court "has refused to establish a bright line figure to denote when the economic impact on the claimant has become severe enough to warrant a compensable taking"). The *Yancy* and *Florida Rock Industries* cases support Lifestyle's argument that a 94% diminution in value is substantial.

notion that the government can take two thirds of your property and not compensate you but must compensate you if it takes 100% has a ring of irrationality, if not unfairness, about it." *Florida Rock Indus.*, 45 Fed. Cl. at 23.

Third, the City argues that the Court should not intervene in land use decisions. (ECF No. 79 PageID # 4465-66 (citing *SAS Assoc. 1, LLC v. Chesapeake*, 91 F.4th 715 (4th Cir. 2024).) Yet, as the Sixth Circuit held in *Andrews*, "courts routinely consider takings claims . . . that arise from a local authority's denial of rezoning, variances, or land-use permits." 11 F.4th at 469. The equal protection case cited by the City is inapplicable to this takings action.

Fourth, the City contends that "Plaintiffs' expert report and testimony are immaterial." (ECF No. 79 PageID # 4466), arguing that a "diminution in the value of property, however serious, is insufficient." (*Id.* (citing ECF No. 37 PageID # 530, n. 10).) The City misconstrues this Court's prior opinion in making such an argument. Nevertheless, not only is the Property's 94% diminution in value substantial, Lifestyle's claim extends beyond economic harm and includes the City's actions to prevent Lifestyle from putting its Property to entirely reasonable and legitimate uses. Lifestyle's claim does not turn "exclusively [] upon the magnitude of a regulation's economic impact." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 540 (2005). Finally, although the City claims it will attempt to exclude Lifestyle's expert's testimony at trial, the City has not put forth any evidence to create a dispute of material fact concerning the value of the Property.

### 2. Lifestyle Has a Reasonable Investment-Backed Expectation in the Property.

The City contends that Lifestyle lacked a reasonable expectation in developing the Property because Lifestyle acquired the Property with the existing zoning in place. (ECF No. 79 PageID # 4466-67.) Yet, the United States Supreme Court held otherwise: acquisition of title after the effective date of the state-imposed restriction does not bar a taking under *Penn Central*. *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001). Moreover, the City wholly ignores that the Focus Area

Plan – which was in effect when Lifestyle acquired the Property – explicitly authorized Lifestyle's proposed development. (Hermann Dep. Ex. 1, pp. 89-94; Sudy Dep. Ex. 140, p. 10.)

The City next argues that Lifestyle's representatives acknowledged that rezoning would be difficult. (ECF No. 79 PageID # 4467-68.) Any commentary made by Lifestyle regarding the difficulty of rezoning does not negate an expectation that the Property would be rezoned consistent with the Focus Area Plan.[3] (DeAscentis Dec. ¶ 7, previously filed as ECF No. 80-1.) While the City claims that Jason Sudy recognized that the City could deny a rezoning application, that line of questioning related specifically to a rezoning with density inconsistent with a land use plan. (Sudy Dep., pp. 64-65.) Mr. Sudy was asked whether "meeting the guidance in this 2014 focus area document" requires the City to approve an application. (*Id.*) He responded:

> The City of Worthington must, in my opinion, use this document as the primary guiding source of evaluation, and as many cities they have a board that also considers aesthetics, and that is a valid review tool that can be used. Unfortunately in this case, it never progressed to the aesthetic review based on the fact that it was cut short before the architectural review board was able to participate in that.

(*Id*. at 65.) Mr. Sudy's testimony is entirely consistent with Lifestyle's reasonable investment-backed expectation to develop the Property in accordance with the Land Use Plan. (*See also* Sudy Dep. Ex. 140, p. 12 (noting Lifestyle's reasonable expectation that the Property would be zoned in accordance with the Land Use Plan).)

### 3. The Character of the City's Actions Constitutes a Taking.

In its Opposition, the City first claims that the it did not "single out" Lifestyle. (ECF No. 79 PageID # 4469.) The City tries to distinguish *Bridge Aina Le'a, LLC v. State Land Use Comm.*, 950 F.3d 610 (9th Cir. 2020), on the grounds that, under the specific facts of the case, the court ultimately found the landowner was not singled out and therefore there was no regulatory taking.

---

[3] Lifestyle again objects to the Court's consideration of the City's "transcript" of the Board of Revisions hearing that contains testimony that would not be admissible at trial.

But the City fails to rebut – or even address – the evidence in *this* case.  The City simply ignores the sworn testimony of Council Members Robinson, Brewer, and Bucher that Lifestyle was treated differently than any other Property owner in the City.  (*See* Robinson Dep., p. 138; Brewer Dep., p. 40; Bucher Dep., p. 70.)

The City next argues that Resolution 04-2022 did not create a *de facto* moratorium because the City is not required to follow Resolution 04-2022.  (ECF No. 79 PageID # 4470.)  The City confuses the concept of an express moratorium and a *de facto* moratorium.  The term "*de facto*" means to "have[] effect even though not formally or legally recognized."  Black's Law Dictionary, 375 (5th Ed. 1979).  Resolution 04-2022 prohibits *any* development of the Property unless the Property (which includes multiple parcels) is developed as a cohesive whole with a large continuous greenspace.  Even construing the facts in the light most favorable to the City, a reasonable juror could come to only one conclusion – the City *will* apply Resolution 04-2022 to any future development application.  While the City claims Resolution 04-2022 is "discretionary" in its filings to this Court, the City enacted Resolution 04-2022 to stymie Lifestyle's proposed development when the City's purported "window" opened for the City to do so.  (Robinson Ex. 108, p. 8.)  The City's secretive, late-night actions adopting Resolution 04-2022 contradict its contentions in this litigation.

Third, the City erroneously claims there is "no evidence that the City is forcing Plaintiffs' property into a public park."  (ECF No. 79 PageID # 4470.)  Again, the City fails to rebut – or even address – the sworn testimony of Councilmembers Robinson, Kowalczyk, and Brewer that they would like the Property to include a large public park.  (ECF No. 65 PageID # 1667.)  The City attempts to distinguish the case law cited in Lifestyle's Motion on the grounds that the cases concern physical appropriations through eminent domain proceedings.  (ECF No. 79 PageID #

4470-71.) This is precisely the point. The *Penn Central* test aims "to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 457 (6th Cir. 2009) (internal citation omitted). Because the City is forcing Lifestyle to use the vast majority of the Property as a public park, the City should compensate Lifestyle. The City cannot avoid paying just compensation by imposing a regulatory scheme rather than directly appropriating the Property. The City's actions have gone "too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

### B. Lifestyle's Retaliation Claim Is Supported by Undisputed Evidence.

The City tries to avoid liability from Lifestyle's First Amendment retaliation claim by arguing that there was insufficient "personal animus" against Lifestyle. (ECF No. 79 PageID # 4472.) The City's argument not only ignores the evidence to the contrary, it also misstates the standard for a retaliation claim: "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) (internal citation omitted). While "animus towards the plaintiff's statements or viewpoints [i.e. retaliatory animus] can support the inference of retaliatory motive," a plaintiff need only show the causal connection to succeed on a retaliation claim. *Meadows v. Enyeart*, 627 F. App'x 496, 504 (6th Cir. 2015). Accordingly, Lifestyle need not prove that there are other "similarly situated" owners or identify treatment based on "ill-will or animus," which is the standard for an equal protection claim. (ECF No. 79 PageID # 4473.)

### 1. The City Took Numerous Adverse Actions Against Lifestyle.

The City's arguments regarding its adverse actions against Lifestyle lack merit. First, the City argues that the denial of the Application was not an adverse action. (ECF No. 79 PageID # 4474.) The City posits that Lifestyle's reliance on *Fritz v. Charter Twp. of Comstock* is misplaced

because the Sixth Circuit found, at the pleadings stage, that the individual needed the permit to conduct her business. (ECF No. 79 PageID # 4475.) But just as in *Fritz*, the denial of the Applications "directly impacts [Lifestyle's] ability to conduct [its] business in the manner of [its] choosing." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 728 (6th Cir. 2010).

In any event, this Court already found that "prohibit[ing] Lifestyle from reapplying for six-months after its application was rejected" constitutes an adverse action "[i]f true." (ECF No. 50 PageID # 640.) The evidence establishes this to be true. While the City relies upon its Zoning Code in response, the provision the City relies upon only prevents refiling of the *same* application, not a different one. (Brownlee Dep. Ex. 1.) Yet, the City prohibited Lifestyle from submitting *any* application for six months, regardless of whether it differed. (Smith Dep. Ex. 43, pp. 11-12.)

The City also claims that the Comprehensive Plan and Resolution 04-2022 do not limit Lifestyle's development of the Property, but rather serve as a guide for Council. (ECF No. 79 PageID # 4476-77.) This argument lacks merit. First, the Resolution constitutes an adverse action under the First Amendment. *See Koala v. Khosla*, 931 F.3d 887, 904-06 (9th Cir. 2019) (enactment of an ordinance can be the basis for a retaliation claim). Second, City Council's actions undercut the City's argument. Were Resolution 04-2022 as flimsy as the City now argues, there would have been no need for City Council to rush to secretly adopt the Resolution as an emergency without notice to Lifestyle. Further, even if the Comprehensive Plan and Resolution 04-2022 involve the exercise of discretion, "every application that might somehow be the subject of a discretionary decision is not removed from constitutional protection." *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 238, 240-41 (E.D.N.Y. 2009) (sustaining First Amendment retaliation claim).

The City's reliance on *Sanimax* to argue that an adverse action did not occur is misplaced. The odor ordinance at issue in *Sanimax* applied broadly and was enacted to provide an "adequate

enforcement mechanism." *Sanimax USA, LLC v. City of St. Paul*, No. 23-1579, 2024 U.S. App. LEXIS 4913, at *8 (8th Cir. Mar. 1, 2024).[4]  Here, the City adopted Resolution 04-2022 to govern only Lifestyle and its Property – without any notice to Lifestyle.  (Bucher Dep., p. 70.)

Finally, the City argues that Lifestyle's CEO Michael DeAscentis's statement regarding whether he believed Lifestyle would obtain the necessary zoning approvals demonstrates that there was no adverse action in this case.  (ECF No. 79 PageID # 4477-78.)  However, the standard for a First Amendment retaliation claim is objective, not subjective.  *See, e.g.*, *Gordon v. Schoyck*, No. 20-3372, 2020 U.S. App. LEXIS 37312, at *18-19 (6th Cir. Nov. 25, 2020) (explaining that plaintiff need not show "actual deterrence" by an adverse action because this is an "objective standard").  Moreover, subjective beliefs must be viewed in full context, such as whether one believed the City would follow its zoning law, procedures, and precedent – or not.  Here, the undisputed evidence establishes that the City shut Lifestyle down at every opportunity after the Applications were filed, prohibited Lifestyle from submitting any application for six months, and then hastily adopted Resolution 04-2022.

### 2.  The City's Actions Were in Retaliation for Filing the Applications.

The City attempts to sever the causal connection between Lifestyle's Applications and the City's adverse actions by relying on reasoning from equal protection claims.  (ECF No. 79 PageID # 4478.)  Equal protection claim jurisprudence is inapposite.  A First Amendment retaliation claim

---

[4] In *Sanimax*, the parties solely disputed the third element for a First Amendment retaliation claim, thus *Sanimax* has no weight in determining whether an adverse action occurred here, which is the proposition for which the City cites the case.  *Id.* at *13.  Moreover, the plaintiffs in *Sanimax* complained that an odor ordinance was enacted in retaliation for protesting prior versions of the ordinance.  *Id.* at *11.  In reasoning that there was no retaliation, the court relied on the fact that the ordinance was amended to provide "clarity," and not retaliation.  *Id.* at *15.  Here, the facts are the opposite: Resolution 04-2022 was enacted during the City's manufactured "window" of opportunity through Council's denial of the Applications.  (Robinson Dep. Ex. 108, p. 8-9.)

asks whether the City's actions were "motivated at least in part by [Lifestyle's] protected conduct," which the evidence establishes. *See Ehrlich*, 710 F. App'x at 650 (citation omitted).

The City also attempts to disavow Councilmember and President Robinson. (ECF No. 79 PageID # 4478-79.) Yet, the City – through the actions of its City Council and its City leaders – engaged in adverse actions against Lifestyle by voting to deny Lifestyle's Applications, instructing Lifestyle that Council would not consider any applications by Lifestyle for six months, and by adopting Resolution 04-2022. *See, e.g.*, *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006) ("where improperly motivated members supply the deciding margin, the board itself is liable"). In short, the City's arguments are undermined by its retaliatory actions.

### C. The City Fails to Meaningfully Oppose Lifestyle's Declaratory Judgment Claim.

The City's Opposition misconstrues Lifestyle's declaratory judgment claim as a recitation of its takings claim and does not contest that Lifestyle is entitled to two of the declarations that it has moved on, namely that Lifestyle is entitled to declarations under Ohio law that:

1. "Subjecting the Property to an S-1 zoning designation is unconstitutional, unreasonable, and/or not substantially related to the public health, safety, or welfare." (Compl. Prayer for Relief, at (C).)

2. "Use of the Property for a planned unit development within a Planned Unit District and approving the Applications is constitutional, reasonable, and substantially related to the public health, safety, or welfare." (*Id.* at (E).)

For the reasons stated in Lifestyle's Motion, those declarations are warranted, especially in light of the City's failure to substantively contest them.

## IV. CONCLUSION

For the reasons set forth herein, Lifestyle respectfully requests that the Court grant its Motion for Summary Judgment and that the remaining issues of just compensation and damages be decided by a jury.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Kara M. Mundy (0091146)
Emily J. Taft (0098037)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Tel: (614) 464-6233
jrmiller@vorys.com
clingram@vorys.com
kmmundy@vorys.com
ejtaft@vorys.com

*Counsel for Plaintiffs*
*Lifestyle Communities, Ltd. and*
*Worthington Campus, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing was served on all parties of record through the CM/ECF

system on April 11, 2024.

*/s/ Joseph R. Miller*
Joseph R. Miller